Orman, Admr., vs. Day et al.—Statement of Case.

---

THOMAS ORMAN, ADMINISTRATOR OF SIMPSON, APPELLANT, vs. J. & D. J. DAY AND THE APALACHICOLA LAND COMPANY, APPELLEES.

The building of a party wall by the owner of a lot gives him no right to claim contribution from the owner of the adjoining lot, without express agreement of the parties.

Appeal from Franklin Circuit Court.
The facts presented by the record will be found em-
48

braced in the opinion of the Court, to which reference is is made.

*Baltzell* for Appellant.

At the sale of *front or water lots* in the City of Apalachicola in the year 1836, the purchasers of lots, with the sanction and approval of the owners of the city, (the Apalachicola Land Co.,) agreed upon a plan by which the owners of adjoining lots should so build as that each should have the benefit of his neighbor's wall—in other words, that instead of each owner of a lot erecting two full side walls, in brick, on his own lot, one wall should be erected, covering a portion of each lot, at the joint expense. In other words, party walls made. As the buildings were to be of brick, three stories high, fire-proof, and only thirty feet in front, the arrangement was highly advantageous, giving a greater extent of front, enlarging the building, and diminishing very greatly the expense and cost of the construction.

Simpson built after this mode. The Land Co., owning the adjoining lot on the Western side, lease to Day and afterwards sell to him, providing, however, in their deed for the contingency of a recovery by Simpson. The Days build, uniting their roof and outer walls to those of Simpson, and the party wall erected by him is made and used as one of the walls of their building.

They refuse to pay him any portion of the expense of the erection of the party wall, and both he and the Apalachicola Land Co. resist the claim on the ground of its injustice and illegality—the statutes of fraud and of limitation are also relied upon. There is no dispute about the right of Simpson to build upon the lot of the Land Co.; no dispute as to their right and that of Day to the support of Simpson's building—both these have been conceded and

are admitted. The sole question is whether the Land Co. and Day, using and having the benefit of the wall erected by Simpson at his own expense, thus enhancing the value of their property by relieving them of the expense of the erection of a separate wall, shall pay for the benefit and advantage thus derived. The right of Simpson's estate then accrues. If there is merit in the decision by Chan. Kent in 4 John. Chy. R., 334, then there is in our case. *Qui sentit onus debet sentire commodum.* The cases in Sanford and from Alabama are of owners in severalty, having no privity, unconnected with each other, and wholly inapplicable. Our case comes rather under the denomination of "disposition of the owner of the tenements," as treated by Gale and Whatley, in their work on Easements, 157, 38, 39, 49, 53; 3 Kent, 436.

It is said, however, that the Land Co. did not know, nor sanction, nor approve this arrangement as to the mode of building—a supposition only maintainable on the ground that they were grossly negligent, ignorant or stupid, both as to their rights and interests. They had sold near $100,-000 of these lots, reserving the ownership of some of them. They were the owners of nearly two-thirds of the remainder of the city unsold; they are proved to have had an agent on the spot, Mr. Nourse, superintending, arranging and directing. The contract as to the peculiar mode of the construction of these buildings shows that their mind was specially addressed to the subject. How, then, could they know nothing of it? Nor is the assertion of the defence made by them in this case calculated to elevate their character greatly in the moral scale. They have done and are doing what no respectable purchaser of their lots in that city, merchant or not, has ever done. They are the lords of the city—its founders!

388 SUPREME COURT,

Orman, Admr., vs. Day et al.—Argument of Counsel.

*Davis* for Appellees.

The bill seeks to recover the half of the value of a wall standing on the land of defendant.

The relief sought is based upon an agreement asserted to have been made between Curtis and Delafield, the vendors of Simpson's lot, by which Simpson was to build his wall partly on his own land, and partly on that of C. & D. adjoing, and C. & D. covenanting to use the wall so built, and pay Simpson for its use.

The agreement set up amounts, first, to a covenant by C. & D. to permit Simpson to erect a part of his wall on the land of C. & D., and if valid at all, gave Simpson such an interest in the land as would protect him from a trespass suit.

This kind of agreement is of itself void as being against the statute of frauds. 4 Sandford, 485.

The agreement set up is void, because it seeks to establish in Simpson a greater interest in land than that conveyed by his deed and the contract of purchase.

The evidence which was offered to sustain the agreement was illegal, because it was offered to enlarge the estate of Simpson beyond the terms of the deed. A condition was attempted to be proven which was repugnant to the written contract.

If the agreement as to the wall and its use was a valid one, and in writing, it would be a covenant running with the land, and would continue forever. Can there be such a thing as a covenant running with land, resting upon parol? If it was such a covenant, it would bind purchasers, and this cannot be where there is no writing and no record. In this case, the agreement set forth claims a right to payment for the wall from the time at which the building is erected by Day. Suppose the wall had been

built for an hundred years, how absurd would be an attempt to establish by parol and enforce such an agreement after so long a time.

If the agreement set up does not amount to a covenant running with the land, and as such to be performed by the assignee or purchaser, then it was the personal covenant of C. & D., and if so it is void, because it was not in writing, and is barred by the statute of limitations.

The covenant on the part of Simpson to erect a house, was a part of the consideration of the sale. The contract is that he shall build on the lot sold him, and not on that of C. & D. There is no covenant by C. & D. as to any right or benefit to accrue to Simpson, as a duty to be performed by C. & D., other than such as is expressly confined to the lot sold Simpson.

Suppose that the wall, when built by Simpson, was erected under an agreement such as made it a party wall. In such case, each would own the half of the wall standing on his own land, without regard as to which one paid for the work. If the whole price was paid by one, the other would be debtor to him for half the cost.

But secondly, the agreement set up, if sustained, conveys to C. & D., and their assigns, an interest in the land of Simpson so long as the wall stands. This sort of agreement is also void, for the reason before given.

Thirdly, the agreement not only protects Simpson's occupation of the land of C. & D., and affords him a defence to any action of ejectment or trespass, but it goes still further, and limits and controls the use and enjoyment by C. & D. of their land. But for the agreement, C. & D. could build on their land and use all erections upon it— " *cujus est solum ejus est usque ad cœlum*," the well known maxim of law, excludes all right to control the use of land by its owner.

By the agreement, C. & D. can only use their land, and all standing upon it, by paying to Simpson a sum of money. This amounts to a conveyance to Simpson of an interest in land, by parol agreement, and as such is void.

WRIGHT, C. J.:

This is a cause brought up on appeal from a decree in the Circuit Court of Franklin County, dismissing the bill of complaint therein. The facts disclosed by the pleadings and the evidence are as follows:

On the 18th April, 1836, the Apalachicola Land Company, by their directors, entered into a written agreement with Samuel Simpson, since deceased, whereby they undertook to convey to Simpson lot No. 2 in the plan of the city of Apalachicola, complete and perfect titles to the said Simpson to be made, on his paying for the property the purchase money agreed on, and on condition also that Simpson should erect upon the lot in question a substantial brick building, of a size, character and description particularly set forth.

On the 13th of January, 1838, a complete and perfect title was made to Simpson, he having in the meantime performed the conditions imposed by the above written agreement. Lot No. 3, adjacent to Lot No. 2, remained undisposed of by the Land Company until 1st October, 1846, when a lease was made of lot No. 3 to Jeremiah Day and Daniel J. Day, by which lease this lot was demised for the term of seven years, at an annual rent of $300. The Days proceeded at once to erect a brick store-house on lot No. 3, using the wall of the building previously erected by Simpson as the partition wall between Simpson and themselves, which partition wall had been built six inches on each of the lots Nos. 2 and 3.

The relief sought by the bill is that the Apalachicola Land Company, or the Days, whichever may be liable therefor, should be decreed to pay to the complainant the one half of the expense of the building of said partition wall.

The depositions of a number of witnesses were taken in the cause, and the substance of the evidence thus obtained is, that the buildings erected on water street, (where lots 2 and 3 are situate,) were of uniform size, 30 feet front by 80 feet deep, and three stories high ; that party walls were left in a rough, unfinished state for the adjacent owner to build against, and that such was the case with the wall between lots 2 and 3 ; that adjacent builders paid each one half the expense of the partition wall ; that by the conditions of sale, buildings were required to be of brick ; that the Land Company had an agent at Apalachicola, who was cognizant of these arrangements ; that the usual mode of building was to place half of the partition wall on the adjacent lot, &c.   Each of these witnesses had himself built on water street.

The use intended to be made of this evidence is not very clear.   If it was designed to establish an usage in the matter of building partition walls at Apalachicola, in 1836 and '7, and thereby to show that there was an implied obligation upon the Land Company, or their lessees, to contribute to the party wall erected by Simpson, it is scarcely necessary to say that no such obligation could arise—certainly not upon the Land Company, whose business was the selling of lots, not building on them ; and certainly not upon the other respondents, the Days, for nearly eight years elapsed after the building of Simpson's store before the date of the lease to the Days, and there is no proof that they had any notice of such usage.   Judging from the course of the argument, however, the object of this testimony would seem to be to fix upon the Land Company a participation,

agency and control in these building arrangements, *out-side* of their written contracts. But the evidence proves nothing of the sort, and if it did it would be met by the familiar principle, as true in equity as at law, that no parol evidence can be received to alter, vary or contradict the terms of a deed. It is upon the deeds, then—the conveyance to Simpson and the lease to the Days—that we are to consider this case.

Reduced to its simple elements, the case made for the consideration of the Court is this : Simpson was owner of lot No. 2. He built on his whole front, and encroached six inches on lot No. 3. The Days afterwards leased and built on lot No. 3, and availed themselves of the partition wall which Simpson had thus supplied.

The principal authority relied on for the complainant, is the case of Campbell vs. Mesier & Dunstan, 4 John. Ch. R., 334. In that case an old party wall, standing between two houses which were in a ruinous condition, was taken down by the owner of one of the houses, to enable him to build his house anew. He gave notice of his intention to the owner of the adjoining house, and requested him to contribute to the work. It was decided by the learned Chancellor that the owner of the newly built house was entitled to contribution in the building of the wall.

By a careful comparison of the case above cited with the case at bar, it will be seen that there is but little analogy between the two. The mere existence of an old party wall between two adjoining lots, in a town or city, built equally on both lots, carries along with it the idea of joint ownership in the wall, and a common obligation to keep it in repair ; for though upon the principle that the owner of the soil owns all above it, the property in the wall follows the property in the land, yet the common user of a wall adjoining lands belonging to different owners, is *prima*

*facie* evidence that the wall and the land on which it stands belong to the owners of the adjoining lands in equal moities as tenants in common. See Gale and Whatley on Easements, 296. And this is in effect the principle established and enforced in the case of Campbell vs. Mesier & Dunstan. But it by no means follows from this that when the owner of a lot builds upon it a new party wall, and places one half of it upon the lot of his neighbor, he thereby acquires any right to claim contribution for the building of the wall. It is every way right to build upon his land or not to build upon it, and to permit or forbid any other person to build upon it; and if it be built upon in any way or to any extent, without the consent of the owner, such building upon it is a trespass. It is alleged, however, that the Land Company had their agent on the ground, and that he made no objection to the building of the wall in question. This makes no difference, whatever may have been the relative rights of the purchasers of lots who built in 1836 and '37, under the general consent proved in the case in regard to party walls. That understanding could not affect the Land Company, whose business, as has been already said, was the selling, not building on, the vacant lots of the city, and who, so far as appears, gave their agent no authority in the matter. The case of Sherrod vs. Cisco reported in 4 [ ] (480, is full upon the point involved in this cause, and its reasoning commands the entire assent of this Court. The principles of law and equity arising in that case, were, in all respects, identical with those which govern the case before us. There the decision of Chancellor Kent in Campbell vs. Mesier is carefully reviewed, and it is clearly shown that its reasoning has no application to a case like the present.

Cases were cited in argument to show that where the

49

owner of the adjoining lot was applied to by the person who was about to build a party wall, to contribute to the expense, and such person assented, and signified that he would pay his proportion, the same might be recovered at law. Of this there cannot be a doubt. The mutual convenience of the parties would be an adequate consideration for such a provision; but then the promise must be express. Upon the whole, it seems very clear that the Apalachicola Land Company was at no time bound to contribute to the expense of erecting the party wall built by Simpson, and it follows with stronger reason that the other respondents are not responsible. The lease to them covered the whole of lot No. 3, and upon the principle of law that the owner of the soil is the owner of everything built upon it, carried with it also the one half of the wall.

Other points were made in the record and in the argument, and numerous authorities were cited to sustain them. It is sufficient to say, however, that the whole case is against the complainant, on the merits.

Let the decree below be affirmed.