# Antomarchi's Executor *v.* Russell.

*Bill in Equity for Contribution to Party-Wall.*

1. *Party-wall; contribution between adjacent proprietors.*—When a party-wall separating the buildings of adjacent proprietors, and erected by them at their joint expense, is destroyed by fire, there is no implied agreement between them, nor is there any legal obligation, to rebuild another wall in like manner on the same foundation; and if one rebuilds on the same foundation, he can not compel a purchaser from the other proprietor to contribute to the cost of

the wall, or to make compensation for using it in the subsequent erection of a building on the other lot.

2. *Same; custom, or usage.*—"The custom and practice of lot-owners in the city of Mobile," as to contribution or compensation between the owners of adjacent lots for the cost of a party-wall between them, can not be received to affect their legal rights; and if such custom or usage were valid, it is not sufficiently pleaded by an averment that it has been "constantly and uniformly recognized and abided by in said city in similar cases."

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 30th August, 1877, by Antonio Philippe, as the executor of the last will and testament of Charles P. Antomarchi, deceased, against Thomas S. Russell; and sought to recover from the defendant contribution for the cost of erecting a party-wall between two adjacent lots and houses, owned by the complainant and defendant respectively, or compensation for the use by the defendant, in the erection of his house, of the wall which had been already erected by the complainant. The material facts of the case were thus stated in the opinion of the court, as delivered by MANNING, J.:

"The complainant alleged in his bill that his testator, Antomarchi, and one Joseph Aaron, were severally the owners of two adjoining lots on Dauphin street, in Mobile, on which were two contiguous brick stores; that the middle line of the partition wall between these stores was the boundary between the two properties; and that this wall 'was a wall common to both, and used as a common wall, and had been for a great number of years' before Aaron bought his lot, which he purchased in April, 1860. The bill further alleged that, in December, 1873, after the death of Antomarchi, and while complainant, as his testamentary executor and trustee, was in possession of the lot and store so conveyed to him, both of said stores were accidentally burned down, and the wall between them was destroyed to its foundations, which, however, remained sound and firm; that complainant, as such executor and trustee, caused a store to be rebuilt on the premises of which he was so in possession, erecting the western wall thereof on the foundations of the former wall, so that one-half of the new wall, as of the old, was on the lot conveyed to Antomarchi, and the other half on that of Aaron, upon and along the east side of the latter; that Aaron did did not rebuild upon his lot, but left the same vacant, and sold it, in that condition, to defendant, Russell, in the year 1876; and that Russell thereafter built a store upon it, using in doing so, as the eastern wall and side of said store, the wall so constructed by complainant, and carrying it up higher, as was necessary for the latter edifice he erected. There is

[Antomarchi's Executor v. Russell.]

no averment of any agreement with either Aaron or Russell in respect of this wall, or that either of them knew complainant was building it when he did so. The bill further alleges, that the cost of the wall built by complainant was $1,125, which sum he paid therefor, and one-half of which is due to him from said Russell, who has refused to pay the same, or any part thereof, although it was demanded of him on the completion of the store he built in December, 1876, and 'is lawfully due . . . according to the usage and practice of lot-owners, . . . constantly and uniformly recognized and abided by in said city in similar cases.'

"The answer insists, and testimony was taken to prove, that the entire wall was built on Aaron's lot, now Russell's. But it is not necessary to examine the case in that direction.

"The chancellor dismissed the bill, on demurrer, because the complainant's remedy, if he had any, was at law; and this decree is now assigned as error."

STEWART & PILLANS, for the appellant, cited *Campbell v. Mesier*, 4 John. Ch. 334; 6 John. Ch. 21; 3 Kent's Com. 437 (531); *Brown v. Werner*, 40 Maryland, 15; 3 Eng. Rep. (Moakes' ed.) 294; 7 *Ib.* 577.

BOYLES & OVERALL, *contra*, cited *Sherrod v. Cisco*, 4 Sandf. 489; *Cole v. Hughes*, 54 N. Y. 444; *Partridge v. Gilbert*, 57 N. Y. 209; *S. C.*, 3 Duer, 185; 49 How. Pr. 522; 119 Mass. 254; 5 Florida, 385; 3 Washburn on Real Property, 160; 2 *Ib.* 363; *Brown v. Cockrell*, 33 Ala. 45; *Barnes v. Ingalls*, 39 Ala. 193; *Barlow v. Lambert*, 28 Ala. 704.

MANNING, J. [After stating the facts as above.]—There is no statute in this State on the subject of what are called party-walls. In *Bisquay v. Jeunelot* (10 Ala. 245), a question was brought before this court similar to the one now raised. Jeunelot built a house on his own land, up to the boundary line, we suppose; and the owner of an adjoining lot then also built a house, using for one side of it the wall of Jeunelot. The latter sued the other in assumpsit, for a just proportion of the cost of the wall, and in the court below obtained a verdict and judgment; but the judgment was here reversed. This court said: "The argument here urged is, that, although there is no express contract to pay the proper proportion of the cost of the wall, the law creates a duty to contribute when the wall is used, and from the duty the law will imply a promise to pay. The error of this argument is in the assumption, that the law creates the duty of contribution, when one man, without the consent of the owner, uses

his wall in the construction of his own house. Such an act, in the absence of a law authorizing it, would be a trespass, which might entitle the party injured to damages, but could not be the foundation of an action *ex contractu.*" And for this very reason, we add, it would afford no foundation for a suit in equity; a court of chancery not being the proper forum, in which to claim damages for injuries caused by torts.

But, the case referred to differs from the one before us, in this: that, according to the bill of complaint, Russell used in building his store a wall that, so far as he appropriated it, was erected, not on complainant's, but on Russell's own land, excepting one-half of that portion which was built up higher, and which does not enter into this case. The wall was there when he bought the lot. He had a right to suppose that any thing then erected on the lot was duly paid for by the prior owner; and the wall may have constituted a part of the value which induced him to buy the lot. Indeed, he may have, as was said in *Sherrod v. Cisco* (4 Sandf. 489), "so far as we know, paid for it all that it was worth, including the half-wall then standing upon it; and a judgment in this suit, compelling him to pay the plaintiff for the same half, will make him pay for it twice."

The case just cited does not differ substantially from the one we are considering, and was very thoroughly and ably discussed. In it the court said: "By the common law, every owner of land is his own judge of the propriety of building upon it, or leaving it vacant; and when he does build, of the manner and extent of his buildings. In the absence of statutory provisions, he may build with what material he pleases; and he is under no obligation to give to his neighbor any use or advantage of his land, by way of support, drip, or easement of any description. If a stranger dispossess him, or enter upon his unoccupied property, erect buildings, and make valuable permanent improvements upon it, he is not under the slightest obligation to recompense such stranger for any portion of the expense, on recovering the possession of the land." By the common law, he became absolutely entitled to all such improvements, without paying any thing for them, when they were made without his request or sanction.

In respect of another feature, common to this case and the case just cited, the court in the latter said: "It was argued, that the fact of there having formerly been a partition wall (which we will call a party-wall), gives the right to have it continued for all time to come. To test this argument fairly, we will assume, what is not proved, but may,

perhaps, be fairly inferred—that the old wall was built by the mutual agreement, and at the joint expense, of the then proprietors of the two lots. It is not disputed that each proprietor remained the owner in severalty of the ground on which half of the wall rested, and, of course, each owned in severalty one-half of the wall. Neither party had a right to pull down the wall, without the other's consent; and to that extent, the agreement on which it was erected controlled the exclusive dominion which each would otherwise have had over the half of the wall, as well as over the soil on which it stood. The case of *Campbell v. Mesier* (4 John. Ch. R. 334; 6 *Ib.* 21), it may be said, is an authority that each was bound to keep the wall good on its falling into decay; but that .case proceeded upon the footing that each had an equal interest in the party-wall, of the same nature as that of tenants in common; and the fact here is clearly otherwise. The parties being confessedly restrained from destroying the wall without mutual consent, how is it when the wall has been destroyed by the elements? The lands on each side are vacant. The agreement upon which the party-wall was built, related to that wall only. There was no agreement to build a second wall, or to build houses a second time, in the event that the original wall, and the houses which it supported, should be destroyed. Neither party, perhaps, thought of such event. If they had, it by no means follows that they would at that time have stipulated for a second joint wall. It might well have occurred to them, that, if the buildings were destroyed, one or the other might not wish to rebuild, or that one might desire to erect a very strong warehouse for heavy goods, requiring thick walls, and the other a private dwelling, with a wall only half as thick. . . . . It suffices to say, that when two owners of adjoining city lots unite in building two stores with a party-wall, we have no right to infer, from that act, an agreement, binding upon them and their heirs and assigns to the end of time, to erect another like party-wall at their mutual expense, when that one is casually destroyed, and so on as often as the new one shares the same fate."—See, also, *Cole v. Hughes*, 54 New York, 444.

We have extracted so largely from the case of *Sherrod v. Cisco*, because that case is almost identical with this, and the questions arising upon it are so clearly and cogently discussed. Similar views, forcibly presented, may be found in *List v. Hornbrook* (2 West Va. 340), and in *Orman v. Day* (5 Florida, 385); and the subject of party-walls is instructively treated at considerable length, and with the citation of num-

# OF ALABAMA.

erous authorities, in Washburne on Easements and Servitudes, 454–474.

The case of *Campbell v. Mesier* (4 John. Ch. R. 334), on which appellant chiefly relies, is different in its facts and features from the present case, and therefore not an authority in point.—See *Partridge v. Gilbert*, 15 N. Y. 601.

In respect to the averment that the sum claimed is due according to "the usage and practice of lot owners," in the city of Mobile, if it were permissible thereby, as it certainly is not, to abrogate or amend the law concerning the rights of owners of real estate in their property, such usage and practice are not so pleaded as to be effectual to that end. On the subject of usage or custom, see *Barlow v. Lambert*, 28 Ala. 704.

Let the decree of the chancellor be affirmed.