# Max Mickel v. John York and Murdock Campbell.

1. PARTY WALLS—*Injuries by the Falling of.*—Where a party wall, standing upon the premises of two adjacent owners, is the property of both, neither can recover of the other for any act of negligence which is a mere omission.

2. SAME—*The Property of the Person upon Whose Premises They Stand.*—Where a party wall is erected upon a division line, that part of the wall which stands upon the premises of the adjacent owner becomes his property, unless there is something in the contract under which it is erected to the contrary, and the fact that the contract provides that before the adjacent owner shall make any use of such wall he shall pay to the party erecting the same one half of the value thereof, does not alter the case.

**Action for Damages,** sustained by the falling of a party wall. Error to the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed October 22, 1896.

MOSES, PAM & KENNEDY, attorneys for plaintiff in error, contended that the effect of the contract in evidence is that it gave license to the defendant in error York, to use a certain portion of the plaintiff in error's land for the purpose of constructing a wall, the wall only becoming a party wall, for any purpose, when the other party pays his portion of the cost, in accordance with the terms of the contract.

Under the law, the north wall of the York building, not having been used, or the price thereof paid by plaintiff in error was the sole and exclusive property of the defendant in error York. Brown v. McKee, 57 N. Y. 684; Masson's Appeal, 70 Pa. St. 26, 30; Glover v. Mersman, 4 Mo. App. 90; Gorham v. Gross, 117 Mass. 442; 125 Mass. 232; Cole v. Hughes, 54 N. Y. 444; Burlock v. Peck, 2 Duer, 90; Gibson v. Holden, 115 Ill. 199, 206, 207; Tomblin v. Fish, 18 Ill. App. 439; Ray on Negligence of Imposed Duties, 206.

The sale of the half of the wall does not occur, nor the title to it pass, until the payment is made under the contract. Gibson v. Holden, 115 Ill. 199; Behrens v. Hoxie, 26 Ill. App. 417.

Moran, Kraus & Mayer and Kerr & Barr, attorneys for John York, defendant in error, contended that the title to one-half of the wall in question was in plaintiff and Annie Pitzele, therefore no action could be brought by plaintiff in error against York, the owner of the other half of the wall. Gibson v. Holden, 115 Ill. 199; Behrens v. Hoxie, 26 Ill. App. 417; Orman v. Day, 5 Fla. 385; Cole v. Hughes, 54 N. Y. 444; Klauder v. McGrath, 35 Pa. State 128; Insurance Co. v. Werlein, 42 La. An. 1046; Negus v. Becker, 38 N. E. Rep. 290 (N. Y. Ct. of Appeals).

The building being destroyed, so that the wall became ruinous, the rights of the parties were as fixed by the common law, and were not covered by the party wall agreement; therefore there was no obligation on Mr. York to restore his building so as to protect the wall. Sherred v. Cisco, 4 Sandf. 480; Partridge v. Gilbert, 15 N. Y. 601; Heartt v. Kruger, 24 N. E. Rep. 841; Antomarchi's Ex. v. Russell, 63 Ala. 356; Huck v. Flentye, 80 Ill. 258; Hoffman v. Kuhn, 57 Miss. 746; Crawshaw v. Sumner, 56 Mo. 517.

Runnells & Burry and Ross & Todd, attorneys for defendant in error Campbell.

Mr. Justice Waterman delivered the opinion of the Court.

On the 8th of May, 1892, the plaintiff in error, Max Mickel, and his sister, Annie Pitzele, were the owners of a lot in the city of Chicago, adjacent to one owned by defendant in error John York, and on that day the respective parties, York being the party of the first part, entered into a party wall agreement containing, among others, the following provisions :

." It is hereby mutually agreed by the said parties, in consideration of the premises, that the said party of the first part may so build and erect a party wall twenty and sixteen inches in thickness, on the north side of the said lot of the party of the first part, that the center of said party wall shall be on the division line of the said lots hereinbefore

mentioned of the said parties of the first and second parts, respectively."

"And this indenture further witnesseth : That the said party of the first part does hereby covenant, promise. grant and agree that the said party of the second part, their heirs and assigns, shall and may at all times hereafter have the full and free liberty and privilege of joining to and using the said partition above mentioned, as well below and above the surface of the ground, and along the whole length or any part of the length thereof, any building which he or they or any of their may desire or have occasion to erect, on the said lot of the party of the second part, and to sink the joists of such building or buildings into the said partition to the depth of —————— inches, and no further. Provided, always, nevertheless, and on this express condition, that the said party of the second part, their heirs and assigns, as aforesaid, before proceeding to join any building to the said partition wall, and before making any use thereof, or breaking into the same, shall pay or secure to be paid unto the said party of the first part, his heirs and assigns aforesaid, the full moiety or one-half part of the value of said party wall, or so much thereof as shall be joined to or used as aforesaid, which value shall be the cost price at the time when such wall is to be used by the said party of the second part, as fixed, estimated and assessed by three disinterested mason contractors."

"And the said parties further agree and covenant that if it shall hereafter become necessary to repair or rebuild the whole or any portion of the said party wall or walls, the expense of such repairing or rebuilding shall be borne equally by them, their respective heirs and assigns, as to so much and such portions of said walls as the said parties, their heirs and assigns, shall or may use jointly."

"It is further mutually agreed between the said parties, this agreement shall be perpetual, and at all times be construed as a covenant running with the land."

York, after this contract was made, proceeded to build the party wall and to construct a building upon his prop-

erty, which was used and occupied by him until the 10th of January, 1893, when it was destroyed by fire. The party wall was left standing, but in so dangerous a condition that on the 19th of January, 1893, the commissioner of public works of the city of Chicago notified York to have the wall of the building taken down at once.

On the 18th of January, 1893, Max Mickel and Annie Pitzele joined in a written notice to York to either pull down the wall or to secure it so as to avoid any impending or possible danger, loss or damage resulting from its unsafe condition.

On the 20th of January, 1893, the wall was blown over and upon two buildings owned by the plaintiff in error and his sister, crushing the buildings completely.

Plaintiff in error brought suit against defendants in error, and a trial was had, upon which the foregoing facts appeared without dispute. The court instructed the jury to find a verdict in favor of the defendant, and on such verdict the court entered judgment.

It is insisted by plaintiff in error that the wall, at the time it fell, was owned by York, while he insists, as was the view taken by the court below, that the wall was from the time of its completion the property of all of the parties to the contract; that York owned so much of the wall as rested upon his lot, with an easement in the remaining portion, and that Mickel and his sister owned all of the wall which rested upon their lot, with an easement in that portion of the wall which was upon the lot of York.

The rule of law is, that whatever structures of a permanent nature are erected upon the real property of another, become, by such erection, the property of the person upon whose realty they stand. Unless, therefore, there is something in the party wall contract under consideration, changing the rights which otherwise, by the erection of this wall, the respective parties acquired, we must conclude that the contention of the defendant in error York, as to the ownership of this wall, is correct.

The contract provides that Mickel and his sister, " their

heirs and assigns, before proceeding to join any building to the wall, and before making any use thereof, or breaking into the same, shall pay, or secure to be paid unto York, his heirs and assigns, the full moiety or one-half part of the value of the wall, or so much thereof as shall be joined to or used, which value shall be the cost price at the time when such wall is to be used by " 'Mickel and his sister.

Such arrangement as to the time at which and manner of ascertaining the amount that plaintiff in error was to pay before making any use of said wall, did not affect the title which he had in and to the permanent structure erected upon his premises. By virtue of an arrangement made by plaintiff in error with defendant in error York, a party wall was built, resting equally upon their respective lots. The portion of such wall being a permanent structure resting upon the lot of plaintiff in error, belonged to him as part of his realty. How he was to pay for it, in no way affected his title thereto, the effect of the contract in this regard being merely that he had not a right to use the wall until he had made payment in accordance with his contract. Washburn's Easements and Servitudes, 4th Ed., pp. 600 to 624; Gibson v. Holden, 115 Ill. 199; Klauder v. McGrath, 35 Pa. St. 128; Behrens v. Hoxie, 26 Ill. App. 417; Orman v. Day, 5 Fla. 385; Cole v. Hughes, 54 N. Y. 444.

The wall being, as it was, the property of both plaintiff in error and defendant in error York, neither can recover from the other for any act of negligence which was a mere omission. The case is entirely different from what it would be, had the falling of the wall injured the property of a third party. If the wall, as is contended by plaintiff in error, was in a dangerous condition, then it was a nuisance which he might have proceeded to have removed. Schile v. Brokhaus, 80 N. Y. 614.

It is also urged that the wall was weakened by an interference therewith by York after the fire, and that in consequence of such weakening it fell. It is sufficient in reference to this to say that there is no count in the declaration asking for a recovery upon such ground.

The judgment of the Circuit Court is affirmed.

Mr. Presiding Justice Shepard, dissenting.

As I view the contract between the parties, it amounted to a license to York to erect one-half of the wall in question upon the lot of Mickel and Pitzele, with a privilege to the latter to use and own the same jointly with York upon paying one-half its value at the time when it should be desired by them to use it, and my opinion is that until such time as it should be valued and paid for, the title to the whole wall remained in York.