JOHN QUINN *vs.* ASA P. MORSE & others.

Suffolk. Jan. 19. — Feb. 3, 1881. MORTON, J., absent.

*It seems,* that the provision of the laws of the Colony and Province, that any one building on his own land in Boston might set half his partition wall on his neighbor's land, and that the neighbor, when he should build, should pay for half of so much of the wall as he should build against, is still in force.

A. owned two lots of land, one of which was occupied by him as a homestead, and was covered by a building several stories high except for a space of seventeen feet in the rear, where it was but one story high, and the other was vacant except that it had on it one half the side wall of the building. A. agreed to sell the

vacant lot to B., the latter to pay what arbitrators should determine the wall on the land sold was worth "in building a store;" and it was further agreed that B. might build a "partition wall" in the rear of A.'s homestead lot, one half on A.'s land, for the use of both parties in common. B. assigned this agreement to C., to whom A. conveyed the vacant lot by a deed in which the boundary line between this lot and the homestead lot was described as running "through the centre of the brick partition wall." C. afterwards became the owner of the lot in the rear of A.'s homestead lot. The value of the side wall on C.'s land was appraised by arbitrators, who in their award described it as "the party wall owned by A. and C., assignee of an agreement made between A. and B." The sum appraised was paid by C. to A., and A. executed to him a formal release in full for the wall and all walls mentioned in the agreement. *Held,* that the effect of these agreements was to make both the side wall and the rear wall party walls, upon which C. might build, placing one half the wall upon the land of A.

BILL IN EQUITY, filed August 4, 1880, by the owner of a lot of land in Boston, marked Q on a plan, a copy of which is printed in the margin,* to restrain the defendant Morse and his servants from building brick walls on the plaintiff's land. The

Franklin Street.

M

22.

H          Q

Pearl Place.

answer averred that Morse was the owner of lots marked H and M on the plan, and was building partition walls, partly on his land and partly on the plaintiff's land, and had the right so to build thereon.

The case was heard by *Endicott,* J., who ordered the bill to be dismissed, and reported the case for the consideration of the full court, in substance as follows:

On May 26, 1879, the plaintiff was the owner of lots Q and H, and occupied lot Q as his residence. This lot was covered by a brick building several stories high, except for a space in the rear seventeen feet in depth, where the building was only twelve feet high. The walls of the main building were twenty inches thick in the basement, sixteen inches thick to the second floor, and all the other walls, including the walls of that part of the building in the rear of the lot, were twelve inches thick. The boundary line between lots Q and H was coincident throughout its length with the centre line of the side line of the building. Lot H was otherwise vacant.

On said May 26th, the plaintiff made an agreement in writing, under seal, with James W. Hobbs, by which he agreed to sell him lot H, and which contained the following clauses:

" It is understood that six inches of the wall of my homestead is upon the land sold by me to the said Hobbs, and it is agreed with James W. Hobbs, that he shall pay to me for the six inches of brick wall on said land the sum of money that his mason and my mason shall agree upon as being worth to said Hobbs in building a store on said land. If the two masons are not able to agree on price for the wall, they shall choose the third man, and the amount so agreed upon shall be binding to both parties.

" It is further understood and agreed, that the purchaser may build a partition wall on my land, on the rear end of my homestead lot, near Franklin Street, the wall to be twenty inches thick, ten inches on my land and ten inches on purchaser's land. The purchaser agrees to put my rear wall in as good condition as it now is at the present time, and pay all damages, if any, to L part of my house ; and that I shall not be liable to pay for the ten inches of wall on my land until used by me or my representatives ; one rear wall is hereafter to be partition

wall, for the use of both parties in common, their heirs and assigns."

Hobbs had no interest at this time or afterwards in lot M, and he subsequently assigned the agreement to the defendant Morse.

On March 19, 1880, the plaintiff conveyed lot H to Morse, by a warranty deed, which described the boundary line between that lot and lot Q, as "northeasterly by other land of said grantor, by a straight line through the centre of the brick partition wall."

On June 10, 1880, Morse became the owner of lot M. On June 18, 1880, arbitrators, appointed to determine "the value of six inches of the party wall owned by John Quinn, and Asa P. Morse, assignee of a certain agreement made between said Quinn and James W. Hobbs," made their award, appraising it at $423.66, which sum they determined Morse should pay the plaintiff. This sum Morse paid to the plaintiff; and on June 23, 1880, the plaintiff signed, sealed and delivered to Morse the following instrument: "Know all men by these presents, that I, John Quinn, one of the parties named in a certain agreement made by me with James W. Hobbs, dated May 26, 1879, and recorded with Suffolk Deeds, lib. 1461, fol. 255, acknowledge to have received of Asa P. Morse, the purchaser of the land in said agreement mentioned, the sum of four hundred twenty-three and $\frac{66}{100}$ dollars in full for the brick wall, and all claims for or on account of walls in said agreement mentioned, or for or on account thereof; and in consideration of said sum of money, I do hereby remise, release and quitclaim and convey unto said Morse, his heirs and assigns, all the lot or strip of land, if any there be, which lies northwesterly of a line drawn through the centre of the wall, built by said Morse, across the rear of my homestead lot, so that the division line between our respective estates shall be through the centre of said wall."

Morse and the other defendants, as his servants, are building on lots H and M a block of stores adjacent to the plaintiff's house and lot, to the height of forty feet, the walls being twenty inches in thickness, on the side and rear lines of the plaintiff's lot, and one half being on the plaintiff's land. These

walls incorporate the plaintiff's walls on the side and rear of the building one story high.

*J. A. Maxwell*, for the plaintiff, contended that the defendants had no right to build on the top of the twelve-foot walls, except on the half belonging to the defendants, and cited *Ackroyd* v. *Smith*, 10 C. B. 164; *Matts* v. *Hawkins*, 5 Taunt. 20; *Bloch* v. *Isham*, 28 Ind. 37; *List* v. *Hornbrook*, 2 W. Va. 340; *Price* v. *McConnell*, 27 Ill. 255; *Weld* v. *Nichols*, 17 Pick. 538; *Phillips* v. *Bordman*, 4 Allen, 147; *Shaw* v. *Hitchcock*, 119 Mass. 254; *Sanborn* v. *Rice*, 129 Mass. 387.

*D. Foster & A. D. Foster*, for the defendants.

GRAY, C. J.   By the laws of the Colony and Province it was enacted that any one building on his own land in Boston might set half his partition wall on his neighbor's land, and that the neighbor, when he should build, should pay for half of so much of the wall as he should build against.   Col. St. February 13, 1683–4; 5 Mass. Col. Rec. 432.   Prov. St. 1692–3 (4 W. & M.) c. 13; 1 Prov. Laws (State ed.) 42.   This provision does not appear to have been repealed, although other sections of the Province law have been modified or superseded by later statutes.   Prov. St. 1699–1700 (12 W. III.) c. 24; 1 Prov. Laws, 404.   Prov. Sts. 1760–1 (33 G. II.) c. 9; 1760–1 (1 G. III.) c. 32; 1763–4 (4 G. III.) c. 31; 4 Prov. Laws, 378, 431, 686. Sts. 1796, cc. 88, 94; 1798, c. 23; 1802, c. 58; 1810, c. 21; 1817, cc. 119, 171; 1826, c. 144; 1835, c. 139; 1871, c. 280; 1872, cc. 260, 371; 1873, c. 298.   See also *Brooks* v. *Curtis*, 50 N. Y. 639; *Vollmer's Appeal*, 61 Penn. St. 118; 7 Am. Law Reg. (N. S.) 10–14.

But it is unnecessary, for the purposes of this case, to determine what would have been the rights of the parties in the absence of any contract between them; because the plaintiff's understanding and intention that both the wall at the side and the wall at the rear end of his lot should be party walls, which the defendant Morse should have the right to carry up in building his store or warehouse, is clearly manifested by the instruments signed and sealed by himself.

As to the side wall.   In the agreement for the sale by the plaintiff to Hobbs of the adjoining lot, it was covenanted that Hobbs should pay to the plaintiff for the half of the wall then

standing on that lot such sum as arbitrators should determine it to be "worth to said Hobbs in building a store on said land." Hobbs assigned the agreement to Morse; and the plaintiff conveyed that lot to Morse, describing it as bounded "northeasterly by other land of said grantor through the centre of the brick partition wall." Pursuant to the agreement between the plaintiff and Hobbs, arbitrators were appointed by the plaintiff and Morse, and awarded the sum to be paid by Morse to the plaintiff for the half of "the party wall," which they further described in their award as owned by Quinn and by Morse, assignee of the agreement with Hobbs. Morse paid that sum to the plaintiff; and the plaintiff, by formal release, referring to his agreement with Hobbs, acknowledged himself to have received that sum of Morse "in full for the brick wall and all claims for or on account of walls in said agreement mentioned."

As to the rear wall. In the agreement of the plaintiff with Hobbs it was covenanted that the purchaser might build a partition wall on the rear end of the plaintiff's lot, half on the land of the plaintiff and half on the land of the purchaser; that the purchaser should put the plaintiff's rear wall in as good condition as it then was, and pay all damages, if any, to the plaintiff's house; that the plaintiff should not be liable to pay for the half of the wall on his land until used by him or his representatives; and that "one rear wall is hereafter to be partition wall for the use of both parties in common, their heirs and assigns." After Morse had become the owner of the lot in the rear of the plaintiff's lot, the plaintiff, in his aforesaid release to Morse, referring to the agreement with Hobbs, and acknowledging payment in full for "all claims for or on account of walls in said agreement mentioned," released to Morse, his heirs and assigns, "all the lot or strip of land, if any there be, which lies northwesterly of a line drawn through the centre of the wall built by said Morse across the rear of my homestead lot, so that the division line between our respective estates shall be through the centre of said wall."

In *Sanborn* v. *Rice*, 129 Mass. 387, cited for the plaintiff, so much of the wall as was carried up by the defendant on the plaintiff's land was not as wide as the original wall, nor was its face, toward the plaintiff's land, parallel with the centre line of

that wall; and the defendant did not rely on any right to carry up a party wall upon the plaintiff's land, but on the plaintiff's want of title in the land itself.

As to the thickness of the walls which the defendants are building, no question appears to have been made at the hearing below, or is reserved by the report.

*Bill dismissed, with costs.*