EDWARD EVERETT *vs.* TAY EDWARDS & others.

Suffolk.    March 25, 1889. — September 5, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, & HOLMES, JJ.

*Parties — Mortgagee — Party Wall — Building Act.*

Mortgagees of real estate were *held* to be properly admitted as parties defendant to a suit in equity by the result of which their security might be impaired.

The owner of two adjoining city lots built a house upon each lot, each separated from the other by a brick wall, one half of which was on each lot, and subsequently conveyed the lots to different persons, each deed describing the boundary line between the houses as "a line running longitudinally through the centre of the partition wall between the houses"; and such wall stood unchanged as the partition wall between the houses for fifty years. *Held,* that the wall was a party wall.

One owner of a party wall may build it to a greater height to support an addition to his building, doing no injury to his co-owner; and the mere fact that in carrying up the wall he violates a building act will not render him liable to such co-owner.

BILL IN EQUITY, filed November 3, 1886, brought originally against the first named defendant alone, for the removal of a portion of a wall standing in part on his land, and for damages for its erection and maintenance.    Subsequently certain mortgagees of his estate were admitted as parties defendant.    The case was heard by *Field,* J., who reported it for the consideration of the full court.    The facts appear in the opinion.

*R. M. Morse, Jr. & C. S. Hamlin,* for the plaintiff.

*E. W. Hutchins & J. H. Young,* for the mortgagees.

W. ALLEN, J.    In the year 1826 the owner of two adjoining city lots built a house upon each lot, each separated from the other by a brick wall, one half of which was on each lot.    The next year he conveyed one of the lots to the plaintiff's grantor, and in 1828 he conveyed the other house to another grantee, under whom the defendants claim.    In each deed the boundary line between the houses is described as "a line running longitudinally through the centre of the partition wall between the houses," and the same description is contained in the deeds to the plaintiff and to the defendants, which deeds were dated May 11, 1886, and June 1, 1883, respectively.    The wall remained without change until July or August, 1885.    In June, 1885,

the defendant Edwards borrowed of the defendants Ropes and Dexter $20,000 on a mortgage of his estate, for the purpose of building an addition to his house, and soon after built up the wall so that it was five feet higher than the peak of the wall as it had been, and eighteen feet above the eaves, putting on a flat roof, and completing the work on September 1, 1885. On November 3, 1886, the plaintiff brought this bill against Edwards alone, to have him compelled to remove so much of the addition to the wall as is on the plaintiff's side of the division line, and for damages. After a hearing upon the merits, a decree was entered ordering the removal of the wall, from which the defendant Edwards appealed. Subsequently, and after the entry had been made on the docket that Edwards withdrew his appeal, the mortgagees, Ropes and Dexter, presented a petition praying that the decree might be vacated, and that they might be allowed to become parties defendant, and to defend the suit on the merits. At the same time, one Chipman, who held a second mortgage of $5,000 on the estate, given by Edwards in September, 1885, filed a similar petition. The petitions were allowed, and the petitioners were admitted as defendants, and filed answers. The plaintiff appealed. The case was heard upon the merits, and reported to the full court.

The mortgagees are directly interested in the subject matter of the suit. It seeks to diminish the value of their security, and is brought to establish the right of the plaintiff to do so. If the plaintiff removed the wall without right, he would be liable therefor to the mortgagees. *James* v. *Worcester*, 141 Mass. 361, and cases cited. The bill is brought to establish and exercise for him his right to remove it. It is no answer to say, that, if the security is impaired, it will be in consequence of the wrongful act of the mortgagor with the permission of the mortgagees. The question whether the act was wrongful is a question upon which the mortgagees have a right to be heard. They are immediately interested in resisting the plaintiff's claim, and are necessary parties to the suit, and their petitions that the decree should be vacated and that they be admitted as defendants were properly allowed.

The wall, as it stood before it was built upon by Edwards, was a party wall. It was built and conveyed by the owner of both

estates as the partition wall between the houses, and has been used as a party wall by the several owners of the houses for fifty years. No express grant, or agreement, or statute, defines or limits the rights of the parties, and they are such as the law implies to have been the intention of the parties from the grant, expressed or implied from user of the wall as a party wall, and it is immaterial whether the grant is by the single owner of both estates, or is the mutual grant of several owners. See *Webster* v. *Stevens*, 5 Duer, 553 ; *Richards* v. *Rose*, 9 Exch. 218. The wall must be taken to have been built as a single structure, and granted by the owner or owners of two estates to constitute the wall of the house upon each estate. It was not the dividing line between the houses, because it was a part of each house, and each owner had an equal right in the whole wall with the other owner. The estate which the owners have in it is an estate in a party wall, and the rights of the owners in it are found in their presumed intention in the mutual grant of a party wall, rather than by classifying it with other estates and deducing its qualities from the name given to it. The English courts, when, looking at the common interest and right of the parties, they call it a tenancy in common, do not mean that either party can have partition ; and the courts of New York, when, considering the rights of one owner in the part of the wall on the land of the other owner, they say that each owns one half in severalty, with an easement in the other half, are not prevented from deciding in the same case that each can take down and rebuild the half of the other, (*Partridge* v. *Gilbert*, 15 N. Y. 601,) nor from deciding that the easement is not an incumbrance upon either estate, but a benefit to each. *Hendricks* v. *Stark*, 37 N. Y. 106. See also *Bertram* v. *Curtis*, 31 Iowa, 46.

We are not considering the frequent cases where the rights of the parties are defined by special terms or agreements, but the simple grant, express or implied, of a party wall ; and this is a grant by the owner of both estates, or the mutual grant of the separate owners, of rights in a wall situated on both estates. What these rights are depends upon the presumed intention of the parties. The question involved in this case is, whether such a grant is limited as to the height of the wall to a particular wall, or to the wall which shall first be built under it,

or whether it gives to either party a right to build higher an established wall for the purpose of putting an addition upon his house. It is assumed that this will be done without impairing the integrity or stability of the existing wall.

The purpose of each of the adjoining owners in providing for a party wall is the same. It is intended to form part of a building on his land. A party wall is as beneficial to him as a several wall, and it is no detriment to him, for the use which one owner makes of it as a wall of his building cannot impair the use of the other. In effect, each owner acquires the right to build one half of his wall upon his neighbor's land, and each, contributing his portion of the expense, has a right to an equal benefit in a wall so built. The wall is a substitute to each for a separate wall, and there can be no implied limitation in his right to use it as he would use his several wall, except that he shall not impair its value to his neighbor. With this limitation, it will be presumed that each intended it for all uses and purposes to which the wall of his building would ordinarily and properly be put. That presumption is for the advantage of both, and to the detriment of neither. If the party wall cannot be built up, neither house can be raised without building a new wall; for if one owner could lawfully build a several wall upon the part of the wall over his own land, it would not be a right of practical value; he could not build on it a sufficient wall. It is not reasonable to suppose that each party intended that he should never use the wall for a building higher than the one that should be first erected, and a provision to that effect detrimental to both parties and beneficial to neither cannot be presumed. If it is said that one owner may not wish to use the wall as built up, and may prefer not to have the adjoining building higher than his own, the answer is, that that is a particular and exceptional circumstance which cannot be presumed. It is presumed to be a detriment to the owner of a building to deprive him of the power to make additions to it, and grants and contracts will be construed on that presumption unless it is controlled by their terms. Not only would a provision implied in a grant of a party wall that it should not be carried higher than as originally constructed, be contrary to the interests and the apparent intention of the parties, but it would not be in

accordance with public policy. The public interest is not promoted by putting impediments in the way of erecting buildings, and the law will not be swift to construe the acts of parties so as to produce that effect.

We have been referred to very few authorities upon the subject, and the question of the right of one owner of a party wall to build it up seems to have been very seldom raised. *Phillips* v. *Bordman*, 4 Allen, 147, discusses the right in a party wall as an easement, and there is certainly nothing in the case unfavorable to the right to build upon the wall. *Sanborn* v. *Rice*, 129 Mass. 387, was tort for breaking and entering the plaintiff's close by building up the partition wall between the houses of the·plaintiff and the defendant, and the action was sustained; but the only question considered in the opinion was whether there was any evidence that the plaintiff owned to the middle of the wall. It is said of that case in *Quinn* v. *Morse*, 130 Mass. 317, at page 322, that "so much of the wall as was carried up by the defendant on the plaintiff's land was not as wide as the original wall, nor was its face, toward the plaintiff's land, parallel with the centre line of that wall; and the defendant did not rely on any right to carry up a party wall upon the plaintiff's land, but on the plaintiff's want of title in the land itself." *Quinn* v. *Morse*, *ubi supra*, was a bill in equity to restrain the defendant from building up a partition wall between him and the plaintiff. The plaintiff had conveyed the estate to the defendant, bounding on the middle of the partition wall. This sale was in pursuance of an agreement by which the defendant agreed to pay to the plaintiff for half of the wall what it was worth to the defendant for building a store on the land. The court say that the intention of the plaintiff that the wall should be a party wall, which the defendant would have a right to carry up in building his store, was manifested by the agreement. The agreement was only to sell one half of the wall for what it should be worth in building a store. The right to carry up the wall seems to have been inferred from the intention in the agreement that it should be a party wall.

In *McLaughlin* v. *Cecconi*, 141 Mass. 252, the whole wall was on the plaintiff's land, and belonged to him, and no question in regard to party walls arose. *Brooks* v. *Curtis*, 50 N. Y. 639, is

directly in point, and decides that one owner of a party wall has a right to build it up. In *Partridge* v. *Gilbert, ubi supra,* in which it was decided that one owner had a right to take down and rebuild a ruinous party wall, the wall was rebuilt higher than before. The party rebuilding was held not liable. It seems well settled that one owner of a party wall has a right to take down and rebuild it when ruinous. In *Campbell* v. *Mesier,* 4 Johns. Ch. 334, Chancellor Kent decided that one owner of a party wall who had rebuilt it could recover contribution from the other owner. In *Standard Bank* v. *Stokes,* 9 Ch. D. 68, it was said that one owner of a party wall, where the Metropolitan Building Act did not apply, had a right to lower the foundation so as to give him a subbasement. In *Field* v. *Leiter,* 117 Ill. 341, the wall was built by the plaintiff, one half on adjoining land. The defendant bought the adjoining land, and an agreement was made between the parties by which the defendant might use the wall as a party wall for his store, ten stories high, with the right to add to the height of it, the defendant agreeing to strengthen the wall and foundation by necessary additions thereto on his own side. It was held that the defendant had a right to make necessary additions to the foundation on the plaintiff's side. *Eno* v. *Del Vecchio,* 4 Duer, 53, decided that one owner might underpin and deepen the foundation, and raise the wall higher on his own land. *Matts* v. *Hawkins,* 5 Taunt. 20, has been cited as deciding that one owner of a party wall can lawfully take down an addition built upon it by the other owner. But this is expressly decided under the Building Act, 14 Geo. III. c. 78, which regulated the rights of the owners.

We have seen nothing in the English cases such as *Cubitt* v. *Porter,* 8 B. & C. 257, *Wiltshire* v. *Sidford,* 1 Man. & Ry. 404, *Stedman* v. *Smith,* 8 El. & Bl. 1, and *Watson* v. *Gray,* 14 Ch. D. 192, in which owners of a party wall are called tenants in common, and which decide that tenancy in a party wall has some of the qualities of tenancy in common, which suggests that one owner of a party wall for the lateral support of buildings can have partition of the wall, or cannot carry it up higher than it may originally be built for the purpose of using it as the wall of his building.

The limitation upon the right of each owner to use the wall as the lateral wall of such house as he may desire to erect is that he shall not impair the value of the wall to the other owner. If one owner carries up the wall, the addition becomes part of the party wall, and the owners have equal rights in it, and the value of the wall to either owner cannot be thereby impaired; but neither owner has a right so to use the wall as to weaken or injure it. *Phillips* v. *Bordman*, 4 Allen, 147. The judge who heard this case found that the wall was not insecure, and did not render the plaintiff's house insecure, and it does not appear that in any particular the new erection impairs the value of the old wall to the plaintiff.

The plaintiff contends that he can take advantage in this suit of the violation by the defendant Edwards of the St. of 1885, c. 374, and of the ordinances of the city of Boston, by building up the wall without a permit from the inspector of buildings, and by making the wall of less thickness than required by that statute and the ordinances. But these were not intended, as was the English statute before referred to, to regulate the rights of the parties between themselves, but for the public protection and security. The statute prescribes penalties for its violation, and provides for its enforcement by proceedings in equity by the inspectors of buildings. We do not think that the plaintiff can maintain any suit against the defendants merely on the ground that the wall was erected contrary to the provisions of the statute or of the ordinance. He must at least show some damage or detriment to himself in consequence. None is shown. The old wall cannot be affected by the statute. The fact that the new erection is a party wall does not expose the plaintiff to the animadversion of the law, or to any detriment in respect of the wall. The worst that could happen to him would be that it should be taken down.

We think that, as between the owners, Edwards had a right to carry up the wall, leaving the old part of the wall intact and secure. If the manner in which he did this was in violation of the statute, that fact does not give to the plaintiff the right to have the wall taken down.

*Bill dismissed.*