# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Bellenot v. Laube's Executor and Others.

### February 2, 1906.

### Absent, Whittle, J.

1. Party Walls—*Case in Judgment—Intention of Parties.*—Where the owner of a lot upon which there is a double tenement separated by a dividing wall, each building being exactly like the other, conveys said lots to two different grantees on the same day, and describes each lot as bounded by the other, and also gives the distance of the beginning point of each from a street nearby, but says nothing about the wall being a party wall, but the parties so regard the wall for a number of years, and so describe it in numerous conveyances of the lot, and it is manifest from the description given in the conveyances from the original grantor that such was the intention of the grantor and the respective grantees, and such construction is necessary to effectuate the rights of said parties, such wall will be held and considered as a party wall.

2. Judicial Sale—*Purchaser—Notice of Contents of Record—Boundaries—Party Wall—Commissioner's Deed—Excess of Powers.*—A purchaser at a judicial sale is chargeable with notice of the contents of the record under which he purchases as to the title, boundaries, etc., of the property sold. If the decree directing the sale and that confirming it describe the property as beginning so many feet from a given street "at the center of the partition wall between it and the adjoining tenement on the east," and that is all the parties to the suit owned, but the commissioner, in making the deed to the purchaser, omits the words quoted, such omission cannot enlarge the rights of the purchaser, and he cannot claim the whole of the wall even though covered by the distance mentioned. He can get no more than the parties to the suit owned, and if the language of the commissioner's deed covers more, it is in excess of his powers.

3. PARTY WALLS—*What Constitutes—Rights of Parties—Dividing Walls —Presumption.*—A party wall is a dividing wall between two houses to be used equally, for all the purposes of an exterior wall, by the respective owners of both houses. It is a substitute for a separate wall for each adjacent owner, and one owner may carry it up to a necessary height for his purposes and the adjacent owner cannot compel him to remove it. In the absence of evidence to the contrary, every wall of separation between two buildings is presumed to be a party wall.

4. PARTY WALLS—*Rebuilding—Strengthening.*—If a party wall be in a state of ruin, and the necessity for rebuilding be established by men skilled in the business, after due notice, one party may compel the other to contribute to the expense of rebuilding it, but if one party only wishes to make the wall wider or higher for his own benefit, he must do so at his own expense, without extending the wall further upon the land of the other party, and without diminishing his rights in the party wall when reconstructed.


Appeal from a decree in chancery of the Chancery Court of the city of Richmond. Decree in favor of defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*Hill Montague,* for the appellant.

*Smith, Moncure & Gordon* for the appellees.

HARRISON, J., delivered the opinion of the court.

In November, 1862, Robert Ellett owned a lot fronting 132 feet on the southwest corner of Broad and Monroe streets, then in the county of Henrico, now in the city of Richmond. On the 5th of that month he conveyed 72 feet fronting on the southwest corner of Broad and Monroe streets to one Creed Thomas, leaving 60 feet, upon which was erected a double brick tenement. On the same day that the deed to Thomas was made, Ellett conveyed this remaining 60 feet, by separate

deeds, as follows: To M. Nenzel 29 feet front lying imme-
diately on the west of and adjoining the Thomas lot, described
as follows: "All that certain lot of land, with a granite front
brick tenement thereon, beginning 72 feet from the west side of
Monroe street, running thence westwardly on the south side of
Broad street and fronting thereon 29 feet, running back south-
wardly at right angles, &c., bounded on the west by the prop-
erty this day conveyed by the parties of the first part to S. D.
Abernathy." The deed to S. D. Abernathy contains the follow-
ing description of the property conveyed thereby: "That cer-
tain lot of land, with a granite front brick tenement thereon,
beginning at a distance of 101 feet from the west line of Mon-
roe street, running thence westwardly on the south side of
Broad street and fronting thereon 31 feet, running back south-
wardly at right angles, between parallel lines, &c., bounded on
the east by the property this day conveyed by the parties of the
first part to M. Nenzel."

It is clear that the sole ownership by Robert Ellett of the
double brick tenement on this 60 foot lot was by these two deeds
severed, and one tenement known as No. 409 West Broad St.
became the property of M. Nenzel, and the other tenement
became the property of S. D. Abernathy.

These two tenements were alike in every respect. They were
brick buildings divided by a brick wall nine inches or more in
thickness. The deed to Nenzel describes his house and lot as
bounded on the west by the property that day conveyed to Aber-
nathy, and the deed to Abernathy describes her property as
bounded on the east by the property that day conveyed to M.
Nenzel. While the deeds do not speak of the dividing wall be-
tween the two tenements as a party wall, it is manifest from the
description in each conveyance that such was the intention of
the grantor and the respective vendees. By no other construc-
tion of these deeds could the manifest rights of each vendee be
effectuated. It is further clear from the record, as shown by
the subsequent alienations of these two tenements, that the suc-

cessive owners regarded and treated the centre of the division wall between the houses 409 and 411 as the division line between the two properties, that line being the eastern boundary of the Abernathy house and the western boundary of the Nenzel house.

In January, 1870, S. D. Abernathy sold her house and lot No. 411, to John E. Jones, and described the same as, beginning at the distance of about 101 feet from the west line of Monroe street, and at the centre of the partition wall between this and an adjoining tenement on the east. In November, 1886, Jones conveyed house and lot No. 411 to McGruder & Jones, in which deed the property was again described as, beginning at the centre of the partition wall between it and the adjoining tenement on the east. In 1891 McGruder & Jones conveyed to Nannie M. Marshall and others, using the same language recognizing and describing the centre of the division wall as the boundary line between the two houses and lots Nos. 409 and 411. This house and lot, No. 411, was next sold in a suit brought for partition by Nannie M. Marshall, and was bought by the appellant, Frances Bellenot.

The deed from the commissioner to the appellant describes the house and lot as, beginning at a point distant 101 feet west from the southwest intersection of Broad and Monroe streets, running westwardly along the south line of Broad St. a distance of 31 feet, leaving out the description contained in the previous deeds, *"and at the centre of the partition wall between this and the adjoining tenement on the east."*

It is this description in her deed from the commissioner that appellant relies on in support of her claim, that the centre of the partition wall is not the true dividing line between her property and that of the appellees, the contention being that, "beginning at a point distant 101 feet west from the southwest corner of Broad and Monroe streets," as described in the deed from the commissioner, would entitle her to the whole of the wall dividing the two houses, Nos. 409 and 411 West Broad st.

The appellant bought the house and lot No. 411 at a judicial

sale, and both the decree of sale and the decree confirming the sale to her and directing the commissioner to make her a deed described the property as, beginning at a point about 101 feet west of the west line of Monroe street, *at the centre of the partition wall between it and the adjoining tenement on the east.* These decrees describe the property that appellant is entitled to, and because the commissioner left out of the deed the description, *"at the centre of the partition wall between this and the adjoining tenement on the east,"* the rights of appellant cannot be thereby enlarged. The deed of the commissioner was in excess of his power and the grantee took only such estate as the court had. *Scott* v. *Moore,* 98 Va. 688, 37 S. E. 342, 81 Am. St. Rep. 749. The court only sold the title of the parties to the suit.

Nor can the appellant claim want of notice that the deed from the commissioner varied the description of the lot actually purchased by her. It was a judicial sale, and the records of the court and the papers in the cause were the only reliable sources of information as to the property to be sold, the title, boundaries, etc. To these the purchaser should have looked. *Long* v. *Weller,* 29 Gratt. 347; *Pillow* v. *S. W. Imp. Co.,* 92 Va. 145, 23 S. E. 32, 53 Am. St. Rep. 804.

Upon this branch of the case our conclusion is that; by the deeds of Robert Ellett in 1862, the centre of the division wall between the tenements Nos. 409 and 411, was established as the dividing line between the two properties;. that this line was recognized by the grantees in those deeds as fixing their respective rights, and has been asquiesced in by subsequent alienations as the true dividing line up to the institution of this suit, a period of more than forty years; and that no part of the building of the appellees rests upon the land of the appellant.

In December, 1891, house and lot No. 409 was purchased by Joseph W. Laube at a judicial sale. Since the institution of this suit Laube has died, and the cause has been revived in the names of his executor, and his legatees and devisees. In

1902, Laube pulled down the old house and kitchen on his lot up to the partition wall between 409 and 411, leaving said parttition wall intact, running it up somewhat higher in order to properly construct a two-story brick store-house then erected by him.

The partition wall between these two properties was a party wall. Every wall of separation between two buildings is presumed to be a common or party wall, if the contrary be not shown; and this not only is a rule of positive ordinance, but is a principle of ancient law. Washburn on Easements (4th Ed.), p. 611.

A party wall is a dividing wall between two houses, to be used equally, for all the purposes of an exterior wall, by the respective owners of both houses. It is a substitute for a separate wall for each adjacent owner; and one owner may carry it up to a necessary height for his purposes, and an action will not lie by his adjacent owner to compel its removal. *Everett* v. *Edwards,* 149 Mass. 588, 22 N. E. 52, 5 L. R. A. 110, 14 Am. St. Rep. 462; *Graves* v. *Smith* (Ala.), 6 South. 308, 5 L. R. A. 298, 13 Am. St. Rep. 60; *Nalle* v. *Paggi* (Tex.), Sup. Ct. 9 S. W. 205, 1 L. R. A. 33; *Harbor* v. *Evans* (Mo.), 14 S. W. 750, 10 L. R. A. 41, 20 Am. St. Rep. 646.

In Jones on Easements, sec. 632, it is said: "A party wall is a dividing wall between two houses, to be used as an exterior wall for each. . . . The term 'party wall' may designate 'a wall divided longitudinally in two moieties, each moiety being subject to a cross-easement in favor of the owner of the other moiety." This he says is the sense in which the term is more frequently used in the United States.

In the light of these authorities, it is clear from the evidence, that Laube, in erecting the new building on his lot, did not, in his use of the party wall, exceed his legal rights with respect thereto, and did not deprive appellant of any portion of her full rights and easements therein, or do her any damage of which she can complain.

About one year after Laube had erected his new building, the appellant pulled down her house No. 411, up to this party wall, for the purpose, as alleged in her bill, of erecting on the lot a new building, the ground floor of which was to be used as a store, and the floor above as a public hall. The decree appealed from holds, among other things, that the old party wall is insufficient in strength to support a building such as the plaintiff in her bill alleges that she contemplates building on her lot; and therefore it is adjudged that appellant has the right, if she elects so to do, to pull down the old party wall and erect a new party wall, at her own risk and cost, of greater width and height, provided that the rights of the appellees in and to the new wall shall not be increased or diminished by such reconstruction, and provided further that no part of such new wall shall occupy a greater portion of the land of the appellees than the old party wall now occupies.

The appellant has no reasonable ground of objection to this provision of the decree. If the common wall be in a state of ruin, and requires to be rebuilt, one party can compel the other, by action, to contribute to the expense of rebuilding it. But the necessity of the rebuilding must be established by the judgment of men skilled in the business, and made on due previous notice; and if the new wall be made wider or higher, &c., the party building must bear the extra expense. Washburn on Easements, pp. 611-12.

It is manifest that the old party wall, nine inches thick, is insufficient to support one side of a building thirty-one feet wide, the upper floor of which is to be used as an assembly hall, and that appellant cannot erect a building for the purposes contemplated by her without a thicker and stronger wall. The old party wall, as it now stands, is sufficient for the purposes of the appellees. If, therefore, appellant desires to erect a building which requires a thicker and stronger wall, she must erect such wall at her own expense.

In proper order the demurrer to the bill should have been disposed of first.   It is, however, sufficient to say that it was properly overruled.

Upon the whole case, we are of opinion that there is no error in the decree appealed from and it must be affirmed.

*Affirmed.*