## FOWLER v. KOEHLER.*

BUILDING REGULATIONS; PARTY WALLS; CONSTITUTIONAL LAW; EMINENT DOMAIN; ESTOPPEL; NOTICE; CUSTOM AND USAGE; COVENANT; DEEDS.

1. The building regulations of the District of Columbia in respect of party walls rise neither to the dignity of statutes or ordinances, but are mere rules for the enforcement of existing rights, established, so far as they relate to compensation to be paid by one using such a wall,

---

*Party Walls—Contribution to Cost.*—The authorities passing upon the enforcement of obligation to contribute to cost of party walls, by or against grantees or successors in title, are reviewed in the note to *Cook* v. *Paul,* 66 L.R.A. 673.

*Constitutional Law.*—As to constitutionality of party-wall statutes, see note to *Cook* v. *Paul,* 66 L.R.A. 710.

by the order of President Washington, expressly authorized by the provisions of the original grant of the Federal district.

2. The building regulations promulgated by President Washington by virtue of the authority contained in the original grant of the Federal district, providing for the erection of party walls, and that the first builder should be reimbursed one moiety of the charge of such party wall, or so much thereof as the next builder should use, is inoperative beyond the limits of the city of Washington as originally laid off; and there is no statute or regulation in force legalizing the erection of such walls beyond such limits.

3. There are but two lawful ways in which a party wall can be established, —one by contract between the owners of the adjoining property, and the other by force of statute.

4. The erection of a party wall by one of the two adjoining owners does not amount to a taking of private property for private use, in the broad sense of the limitations of the Federal Constitution, but amounts only to the establishment of a mutual easement or servitude and benefit.

5. Where the owner of a lot on which a party wall extends accepts the wall by attaching his building thereto, he estops himself to complain of the trespass, and the mutual easement or servitude is as completely established as if the wall had been constructed under the authority of a statute or an express contract.

6. Where the owner of a lot has notice of the construction of a party wall by the owner of the adjoining lot, and stands by, and, without protest, permits the erection of the wall to proceed to completion, the law will imply an agreement on his part to accept the benefits thus tendered.

7. While there is no statute or regulation authorizing the building, beyond the limits of the original city of Washington, of a party wall partly on land of the builder and partly on the adjoining land, and requiring the adjoining owner, when he shall use the wall, to reimburse the first builder, there has been a long-established custom to so construct such walls, and for the second builder to so reimburse the first builder, although such custom has been based upon the erroneous belief that a regulation so providing which is in force within the limits of the city was operative outside of its limits; and because the enforcement of such custom as to walls now in existence will tend to establish uniformity throughout the District; and because the custom is such a fair and just one that no possible evil can result from its adoption,—the grantee of the owner of a lot beyond such limits, when he makes use of a party wall which has been built partly on his lot, will be required to pay the first builder for so much of the wall as he shall make use of.

8. Under a regulation or statute requiring a lot owner making use of a party wall partly on his lot, to pay the builder of the wall for such use, the claim of the builder for such compensation is a mere personal one, creating no interest in the property or the wall, adverse to the adjoining owner.

9. Where the owner of a lot after constructing a building, one of the walls of which is built partly on his lot and partly on the adjoining lot, conveys his property by deed, in which he reserves to himself the right to the free use of such wall, and thereafter a purchaser of the adjoining lot constructs a building thereon, using part of the wall as one of the walls of his building, the first builder is entitled to recover from the second builder compensation for the use of the wall.

No. 2756.  Submitted February 4, 1915.  Decided March 29, 1915.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia for the plaintiff, a demurrer to the declaration having been overruled, and the defendant having declined to further plead.  *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellee, George Koehler, brought suit in the supreme court of the District of Columbia to recover from defendant, Mary A. Fowler, the value of an alleged interest in a party wall. Defendant demurred to the declaration on the ground that the plaintiff is without standing to maintain the action. On hearing, the court overruled the demurrer, and, defendant refusing to further plead, judgment was entered for plaintiff, from which defendant appeals.

It appears that plaintiff was the owner of lot numbered 89, block numbered 35, Columbia Heights, in the county of Washington, which adjoins lot numbered 103. Plaintiff never at any time was the owner of lot 103. He constructed a house on lot 89, placing one half of the west wall on lot 103. He then conveyed lot 89, with the building thereon, to Hannah J. Atkinson, Julia E. Atkinson, and Frances E. Atkinson, by a deed which contained the following reservation: "And the said George Koehler reserves unto himself, his heirs and assigns, the right

to the free use of the west wall of the building erected upon the said lot as a party wall." Defendant afterwards purchased lot 103, and constructed a building thereon, using the part of the wall in question as the east wall of her building.

The judgment is assailed on the ground that there is no statute, ordinance, nor regulation pertaining to the establishment of party walls applicable to the property in question, which is situated outside of the limits of the original city of Washington. By the Maryland act of December 19, 1791 (Burch's Dig. 217), ratifying the cession by the State of Maryland of the present territory within the District of Columbia, it was expressly provided that the title to the lands embraced in the original city passed, subject to the terms and conditions contained in the deeds from the owners thereof, to the trustees Beall and Gantt for the purpose of laying out and establishing the Federal city. The deeds to the trustees contained the following provision: "But the said conveyance to the said —————— (the grantor) his heirs and assigns, as well as the conveyance to the purchasers, shall be on, and subject to such terms and conditions, as shall be thought reasonable, by the President, for the time being, for regulating the materials and manner of the buildings and improvements on the lots, generally, in said city, or in particular streets, or parts thereof, for common convenience, safety and order: provided, such terms and conditions be declared before the sales of any of the said lots, under the direction of the President." Burch's Dig. 332.

Pursuant to the above condition in the grant, and before any lots were sold, President Washington, on October 17, 1791, promulgated building regulations which, among other things, provided as follows: "That the person or persons appointed by the commissioners to superintend the buildings may enter on the land of any person to set out the foundation and regulate the walls to be built between party and party, as to the breadth and thickness thereof: which foundation shall be laid equally upon the lands of the persons between whom such party walls are to be built, and shall be of the breadth and thickness determined by such person proper; and the first builder shall be

reimbursed one moiety of the charge of such party wall, or so much thereof as the next builder shall have occasion to make use of, before such next builder shall any ways use or break into the wall. The charge or value thereof, to be set by the person or persons so appointed by the commissioners." Burch's Dig. 326.

By act of Congress of May 15, 1820 (3 Stat. at L. 583, 587, chap. 104), it was provided that the corporation of Washington should have power "to regulate, with the approbation of the President of the United States, the manner of erecting, and the materials to be used in the erection, of houses," and also "to regulate party or other walls and fences, and to determine by whom the same shall be kept in repair." Pursuant to this authority, the corporation passed an ordinance March 30, 1822, enacting the building regulations promulgated by President Washington. Congress, in other acts, recognized the existence of party walls in the city of Washington by provisions providing for their construction under proper supervision. Immediately following the act of June 11, 1878, establishing the present commission form of government for the District, Congress, by act of June 14, 1878 (20 Stat. at L. 131, chap. 194), authorized and directed the Commissioners to make and enforce such proper building regulations for the District as they might deem advisable, and that such regulations should have the same force and effect as if enacted by Congress.

*Mr. Arthur A. Birney,* for appellant:

1. Plaintiff has no standing. The right of action, if one exists, is in plaintiff's grantees, owners of lot 89, who succeeded to all the rights of plaintiff as first builder. *Eberly* v. *Behrend,* 20 D. C. 215; *Halpine* v. *Barr,* 21 D. C. 331.

2. There is no party wall statute or valid regulation applicable to this locality, which is outside the limit of the original city of Washington. The question is an open one; it has been twice before this court, but was not determined, a decision thereon being unnecessary to the decision in either case. *Priest* v.

*Talbott,* 16 App. D. C. 422; *Smoot* v. *Heyl,* 34 App. D. C. 480. In the supreme court of the District of Columbia, the judges have been divided in opinion. *Smoot* v. *Heyl,* (No. 2015): *Allen* v. *Etchison,* 40 Wash. L. Rep. 41 (1912); *McCormick* v. *Etchison,* 40 Wash. L. Rep. 407. See also *Fowler* v. *Saks,* 7 Mackey, 570; 22 Am. & Eng. Enc. Law, 242, 249. In the absence both of a statute or an agreement to contribute, one who makes use of a wall built by another and standing in part on his land is under no obligation to contribute. 22 Am. & Eng. Enc. Law, 250; *Antómarchi* v. *Russell,* 63 Ala. 356; *Allen* v. *Evans,* 161 Mass. 485; *Wilkins* v. *Jewett,* 139 Mass. 29; *Orman* v. *Day,* 5 Fla. 385; *McCord* v. *Herrick,* 18 Ill. App. 423; *List* v. *Hornbrook,* 2 W. Va. 340.

3. The validity of the party-wall ordinance as respects the city property depends not upon statute, but upon a "condition annexed to the title of every house or lot in the city of Washington" by the ordinance declared by President Washington, October 17, 1791, before the sale of any of the public lots. *Miller* v. *Elliott,* 5 Cranch, C. C. 543, *Halpine* v. *Barr,* 21 D. C. 331; *Fowler* v. *Saks,* 7 Mackey, 570.

Legislation extending the ordinance beyond the city limits would be unconstitutional as the taking of private property without compensation. *Wilkins* v. *Jewett,* 139 Mass. 29; *Traute* v. *White,* 46 N. J. Eq. 437; *Pumpelly* v. *Green Bay Co.* 13 Wall. 166, 181.

There are some cases to the contrary. *Evans* v. *Jayne,* 23 Pa. 34; *Swift* v. *Calnan,* 103 Iowa, 206; *Cook* v. *Paul,* 66 L.R.A. 711.

4. To claim that by 20 Stat. at L. 131, the commissioners were empowered to condemn the property of one person for the benefit of another in a manner in which the public could have no interest is to give a forced and wholly unwarranted effect to the act. A statute, to create such a servitude, must be strictly construed. *Smoot* v. *Heyl, supra.* A "regulation" of the commissioners requiring property owners to remove snow from sidewalks and to sprinkle ashes upon the walks was held void

as "a plain usurpation of the powers of Congress." *Coughlin v. District of Columbia,* 25 App. D. C. 253.

*Mr. George C. Gertman* and *Mr. John Ridout* for the appellee.

*Mr.* Justice VAN ORSDEL delivered the opinion of the Court:

The acts of Congress are not important in this connection, since no attempt has been made, either by Congress or the commissioners of the District of Columbia, to enact a law or an ordinance legalizing the erection of party walls. It may well be that the acts of Congress only conferred power upon the commissioners to regulate the construction of party walls where authorized under existing conditions. In other words, wherever party walls were authorized to be constructed within the limits of the original city, or by contract of the parties outside of said limits, the Commissioners by proper regulations should prescribe the kind of materials to be used and the size, form, etc., of the proposed structure.

The building regulations of the District of Columbia in respect of party walls rise neither to the dignity of statutes or ordinances. They are mere rules for the enforcement of existing rights, established, in this instance, by the order of President Washington, expressly authorized by the provisions of the original grant. The order of the President was necessary, in conjunction with the terms of the grant, to establish this perpetual easement or servitude upon all of the lands embraced within the original city. Being contractual, no legislation was necessary either for the enforcement or the enlargement of the right. Neither Congress nor the commissioners of the District have ever attempted to extend the original party wall regulation promulgated by President Washington. Duties have been imposed from time to time upon the surveyor and inspector of buildings in regard to supervising the construction of party walls; but these can only be interpreted as applying to legal party walls, or such as existed within the original city or by

convention of the parties. Indeed, the last building regulations adopted by the commissioners of the District (October 18, 1909) contain the following provision: "Sec. 62. The 4th section of the building regulations, No. 1, approved by President Washington, October 17, 1791, quoted below, is recognized as in force, and is published for the information of builders. The inspector of buildings has no official duty as to the enforcement of this regulation, as the matter is one of private rights between parties." Referring to the regulation of President Washington, Mr. Justice Cox, in *Fowler* v. *Saks,* 7 Mackey, 570, 579, 7 L.R.A. 649, said: "This building regulation, so authorized, is the foundation and the only source of the right claimed by any one here to locate his party wall one half on his neighbor's land."

There are but two lawful ways in which a party wall can be established,—(1) by contract between the owners of the adjoining properties, and (2) by force of statute. The limitation is well expressed by Justice Cox in *Fowler* v. *Saks, supra,* as follows: "What we understand now by a party wall had no existence at common law, except by convention between coterminus proprietors. A man had no right to enter upon and occupy a part of his neighbor's land for his own convenience, or for any purpose whatever, without his consent. The privilege or easement, as we call it, giving to a builder the right of erecting a division wall between himself and his neighbor, partly upon his neighbor's land, is therefore purely the creature of legislation."

It follows that the right conferred by the regulation of President Washington is one purely in contract, imposed by the condition in the original grant. Referring to this regulation, Chief Justice Cranch, in *Miller* v. *Elliot,* 5 Cranch, C. C. 543, Fed. Cas. No. 9,568, said: "It is, therefore, a condition annexed to the title of every house lot in the city of Washington, that when the proprietor builds a partition wall between himself and his neighbor he shall lay the foundation equally upon the lands of both; and that any person who shall afterwards use the partition wall, or any part of it, shall reimburse to

the first builder a moiety of the charge of such part as he shall use."

We now come to the more difficult questions involved in the present case. The erection of a party wall by one of the two adjoining owners does not, we think, amount to a taking of private property for private use, in the broad sense of the limitations of the Constitution. It amounts only to the establishment of a mutual easement or servitude and benefit. Of course, in the absence of statutory or contractual authority, such a servitude may not be imposed. But, as we shall observe later, it may, under certain conditions, be maintained, though constructed without either statutory or express contractual authority. The erection of a party wall does not change the boundaries nor affect the title of the respective properties. While it stands, each party is permitted to use the wall. The right to its use and enjoyment passes with a conveyance of the properties, and when, for any reason, it ceases to exist, the rights of the respective owners stand as originally.

At common law it was defined as a wall of which two adjoining owners are tenants in common. *Walson* v. *Gray,* L. R. 14 Ch. Div. 192, 49 L. J. Ch. N. S. 243, 42 L. T. N. S. 294, 28 Week. Rep. 438, 44 J. P. 537; *Cubitt* v. *Porter,* 8 Barn. & C. 257, 2 Mann. & R. 267, 6 L. J. K. B. 306. In this country, many of the States have adopted the rule that the owners of a party wall erected in part upon the land of each are not tenants in common of the wall, but are owners in severalty of the part standing upon his land, subject to the easement of his neighbor for its support and the equal use thereof. In other words, the owners of the adjoining lands upon which the wall is constructed are neither joint tenants nor tenants in common of the wall, but each owns the soil in severalty up to the dividing line, as well as that portion of the wall resting upon it, and the soil of each, with the portion of the wall belonging to him, is burdened with the easement and servitude of support in favor of the other. *Hoffman* v. *Kuhn,* 57 Miss. 746, 34 Am. Rep. 491; *Fidelity Lodge, No. 59 I. O. O. F.* v. *Bond,* 147 Ind. 437, 45 N. E. 338, 46 N. E.

825; *Everett* v. *Edwards,* 149 Mass. 588; 5 L.R.A. 110, 14 Am. St. Rep. 462, 22 N. E. 52; *Bellenot* v. *Laube,* 104 Va. 842, 52 S. E. 698.

Undoubtedly this wall, like thousands of others in the District of Columbia outside of the limits of the original city, was constructed in the belief by the owners of the adjoining lots that the builder was authorized by law to construct one half of the wall on the land of his neighbor. A custom so universally acquiesced in will go far toward composing any equitable or legal differences which may arise in the future over party walls now in existence, and which were constructed without express contractual authority. It is a matter of common knowledge that the officials of the District, in the enforcement of the building regulations, require plans of the buildings to be filed in the office of the inspector of buildings, and permits to be issued, and that general supervision is exercised over the construction of buildings in the District as to the quality of materials, relation to the street and to surrounding buildings, plan of structure, etc. It is also a matter of common knowledge that in many instances rows of houses connected by party walls have been constructed by the same owner, and subsequently sold in this condition. And it may be that additions have been laid out by a single owner with express provision for the construction of party walls between the lots of coterminus owners.

In the present case, however, plaintiff constructed the wall in question, one half on the adjoining lot, so far as appears from the record, without either statutory or express contractual authority. It is well settled that, where an owner of the lot on to which a party wall extends accepts the wall by attaching his building thereto, he estops himself to complain of the trespass; and the mutual easement or servitude is as completely established as if the wall had been constructed under the authority of a statute or an express contract. We think the same rule will apply where the owner of an adjoining lot has notice of the construction of a party wall, partly upon his land. If he stands by, and, without protest, permits the erection of the

wall to proceed to completion, the law will imply an agree-
ment on his part to accept the benefits thus tendered.

Assuming that no express or implied agreement existed be-
tween the adjoining owners at the time of the erection of the
wall in question, can defendant, the grantee of the original
owner of lot 103, be required to contribute to plaintiff for the
portion of the wall appropriated by her in the construction of
her house? It is alleged in the declaration, and admitted by
the demurrer, that she purchased lot 103 "subject to the condi-
tion that no structure should be erected thereon, except such
as are allowed in the city of Washington under the building
regulations, and with knowledge of the existence of the afore-
said wall as built and located as hereinbefore described, and
that shortly thereafter she commenced the construction and
building of a dwelling on said lot  . . . ,  and in doing so
she used said party wall as such and as the east wall of her
said dwelling, and for its support made use of said party wall
so as aforesaid built by the plaintiff, in the usual and customary
manner, placing or anchoring the joists and supports of her,
the defendant's aforesaid dwelling, therein and thereon, and she
still continues to so use and occupy said wall; that she has not
paid for such use of said wall the value thereof as ascertained
and certified by the building inspector of the said District."

There is reputable authority to the effect that a person who
uses a party wall, by the acceptance and appropriation of the
wall and the use tendered by his neighbor in its construction,
becomes liable for the value thereof, though neither he nor his
vendor was a party to the erection of the wall, and made no
agreement, express or implied, concerning it. *Spaulding* v.
*Grundy,* 126 Ky. 510, 13 L.R.A.(N.S.) 149, 128 Am. St. Rep.
328, 104 S. W. 293, 15 Ann. Cas. 1105; *Sanders* v. *Martin,*
2 Lea, 213, 31 Am. Rep. 598. On the other hand, the majority
of the courts in this country adhere to the hard and fast rule of
the common law that a person dispossessed becomes absolutely
entitled to all improvements made without his request and sanc-
tion, without paying for them; and whether the entry is tor-
tious or in good faith, the rule is the same. *Antomarchi* v.

*Russell,* 63 Ala. 356, 35 Am. Rep. 40; *Sherred* v. *Cisco,* 4 Sandf. 480; *Orman* v. *Day,* 5 Fla. 385; *Allen* v. *Evans,* 161 Mass. 485, 37 N. E. 571; *Griffin* v. *Sanson,* 31 Tex. Civ. App. 560, 72 S. W. 864; *List* v. *Hornbrook,* 2 W. Va. 340.

Were this an isolated case and of no public importance, we might be inclined to the latter view. But buildings in large sections of the District of Columbia have been constructed in accordance with an established custom that, where the owner of a lot upon which a party wall has been constructed connects his building to it he should pay his neighbor the value of the portion of the wall used. This custom was extended outside of the limits of the original city, probably in the belief that the regulation of President Washington was in force throughout the District of Columbia. The enforcement, as to walls now in existence, of the custom thus established, will tend to uniformity throughout the District; and for that, if for no other reason, the court should hesitate to adopt a stricter rule which might result in much confusion. For whatever source it may have originated, the custom, when tested in the forum of conscience, is so heavily fraught with justice and equity that no possible evil can result from its adoption. In *Spaulding* v. *Grundy,* supra, where this exact question was under consideration, the court said: "But back of this, there stands out in support of appellants' claim the substantial fact that appellee has appropriated to his own use a part of this party wall errected by appellants' vendors, without having paid anything therefor. So that, aside from any of the distinctions that involve the law of party walls in obscurity and doubt, there remains the proposition, strongly put in behalf of appellants, that justice and fair dealing demand that appellee should contribute towards the payment of a wall that he has used to his advantage and benefit. Indeed, it might with propriety be said that the question here involved partakes more of the nature of a suit for contribution than one involving the doctrine of party walls. Placing the case upon this ground simplifies very much the question to be disposed of. We need not inquire into the law concerning covenants running with the land, as it bears upon the questions

of party walls; nor is it necessary to attempt to reconcile the conflicting decisions touching the rights of remote vendees in respect to them. There is authority, founded in reason and justice, that requires a person who uses a party wall, in the absence of any agreement or contract, to contribute his fair proportion of the cost thereof to the person erecting the wall, or, to put it in another and perhaps a better way, to pay a reasonable price for the use of the wall."

We come now to the right of plaintiff to recover under his reservation in the deed. The construction of a party wall creates a mutual servitude which permits the owner of one of two adjoining properties to build one half of his wall upon the property of his neighbor. Such a servitude had been established in this case. Hence, when plaintiff sold his property, the servitude imposed upon the adjoining property passed to the purchaser, as the property could not be used and enjoyed by the purchaser without the full servitude. It follows that the reservation in the deed could not reserve a right which the purchaser acquired in the premises, including the portion of the wall standing upon the land of his neighbor. The whole servitude, of necessity, must pass to the vendee. In *Duperreault* v. *Roy,* Rap. Jud. Quebec 29 C. S. 343, where the reservation was the right to the common use of the wall, the court, sustaining the right of the vendor to collect from the adjoining owner the value of one half of the wall, said: "Then the reserve of the *droit de mitoyennete* [right to the common use of the party wall] could not have reference to the servitude of the property sold over the other property, for that was clearly and necessarily conveyed by the sale of the house as it stood. And yet the vendor must have sold something that belonged to himself. It follows, then, that he could not have sold the servitude of the neighbor's property over his property, as that did not belong to him. That servitude enabled the neighbor to make use of the wall which the vendor had built for the purpose of supporting a house which would be built on the neighbor's property; that servitude was not by any means in the control of the vendor of the house, but was a servitude which the law gave from

public motives to the neighbor. What, then, did the vendor in this case have that he could reserve? That is to say, what right could he have exercised against his neighbor if he had continued to hold the property. Clearly he could not have prevented his neighbor from using the wall which he had built and making it common; the neighbor did not even need to ask his consent for that purpose, but he did have the right to collect from his neighbor the one half of the value of the wall, when the neighbor chose to exercise his servitude of *mitoyennete* [joint property claims of two neighbors to a wall] upon the wall in question. That is the only thing which he had to reserve; that right was not a servitude, and was not a real right at all, but was a personal right, as the judgment below has found." It was further held that the vendor could not reserve an interest in the wall, because "he had no property in the half of the wall which rested on the land of the neighbor."

The mere exercise of the legal right to place one half of the wall on the adjoining land created no title in it. It created in the builder of the wall a right to compensation for one half of its cost when the owner of the adjoining lot should elect to use it. The right to compensation is a mere personal claim, which the law establishes against the adjoining owner when he elects to use the wall; but it creates no interest either in the property or the wall adverse to such owner. In other words, the wall could only be common property between the owners of the two adjoining properties, in the sense that they had the mutual right to use it. Had the plaintiff become the owner of the adjoining lot, and desired to build, he could have used the wall under the reservation without compensation to anyone, for the right to compensation he had reserved. It follows that, not electing to exercise this personal right reserved to himself, he could enforce it against anyone else exercising it.

Th judgment is affirmed, with costs.                    *Affirmed.*