## D. C. LIST, Trustee *et al., vs.* JACOB HORNBROOK.

### July Term, 1867.

1. A "party wall," in the legal sense of the term, can only exist in two ways, *i. e.*, by contract or statute; the common law creates no such right. It is possible, however, that such right might arise by prescription.

2. There is no statute in this State providing for party walls.

3. In 1844 a foundation wall was built, one half of which projected or extended on the adjacent lot; no contract was made between the lot owners as to the cost of such building. In 1860 the party controlling the adjoining lot erected a house, using the wall so projecting, and the vendee of the party who originally built the wall brought a suit in chancery for contribution, claiming one-half of the cost of erecting it. HELD:

   1. That when the wall was *originally built* it must have been done lawfully or unlawfully. If the latter, no contribution could be claimed; if the former it must have been with the assent, express or implied, of the adjoining owner, and such assent, in the absence of proof of an express contract to pay, could not be stretched into an implied contract to pay. For if so it was a promise to pay when the wall was built, and hence was a personal covenant and did not run with the land.

   2. Being a personal contract it was barred by the statute of limitations.

   3. No proof of a contract to pay for the erection of one-half of the wall being produced, it only became a party wall from continued use after it was adopted by the adjacent lot holder; but no liability arose from such adoption to pay for the original construction sixteen years prior; nor could arise except by express agreement.

The facts in this case are substantially stated in the opinion of the president. It is unnecessary to give any of the evidence produced to prove a contract in erecting the wall, as

[*] See page 187.

the president states that it *wholly* failed to sustain all the allegations of the bill in that particular.

*Z. Jacob* for appellants.

*D. Peck* for appellee.

BROWN, President.

Jacob Hornbrook filed his bill in the circuit court of Ohio county, against Daniel C. List, trustee, &c., alleging that Benjamim F. Sanborn, before the year 1842, was the owner of the east half of lot No. 1 of square 6 in the city of Wheeling; that the other half of said lot at that time was held by Samuel Sprigg and Charles D. Knox in trust for the use of Eliza Jane Zane, that the deed of trust gave full power to the said trustees or their survivors to build on said lot; that the said Sanborn being anxious to improve his half of said lot, and the said trustees contemplating to build on said lot at some future day, it was agreed between the said Sanborn and the said trustees that the said Sanborn should build one half of the foundation or cellar wall for the western side of his building, and one half of the brick wall of the same side of said building on the lot so held by the trustees, so that one half of the said wall should rest on the lot of the said Sanborn and the other on the lot held by the trustees, so that it would answer for a wall for any building which the trustees or their successors might erect on their said lot; that they the said trustees would pay to said Sanborn the one half of the expense of erecting the said wall whenever the trustees should use the same; that said Sanborn in the year 1844 erected the wall according to the agreement, two storys high; that the whole cost of said wall was 540 dollars and 92 cents; that the trustees who held the lot have been several times since changed, so that in 1860 Daniel C. List was the trustee, who caused a building to be erected on the lot, for one side of which the wall erected by Sanborn was joined to and used; that Sanborn conveyed his said lot and building thereon to Thomas Hornbrook

and the said complainant in 1845, and that the said Thomas Hornbrook in 1849 conveyed his interest in said house and lot to the complainant. The bill then charges that the said List refuses to pay the complainant for one-half of the cost of the said wall. The defendant List denies that any contract as charged in the bill was ever made so far as he is informed, but admits that said Sanborn did build the wall as charged; that the wall so built by Sanborn is owned by the complainant, and that he the said List as trustee did erect the building as charged, joining it to the said wall, but refuses to pay the complainant anything for the use of said wall. The court gave a decree for 270 dollars and 46 cents with interest from August 3d, 1864, the time the suit was brought, to be paid by the said List out of the rents and profits of the building so erected by the said List.

From this decree the said List as trustee has taken appeal and asks this court to reverse it.

The bill claims half the cost of a division wall built by those under whom the complainant claims in pursuance of an alleged agreement, by the contracting parties to pay the same. But no such contract or agreement is proved; nor is it proved that there was any agreement to pay by any one.

The case, therefore, as made by the bill, wholly fails, and the bill resting on an alleged contract not proved should have been dismissed. For it would be a departure in pleading to decree for the complainant upon some other ground than that stated in the bill.

A party wall, in the legal sense of the term, can only exist in one of two ways: either by contract or by statute; for the common law creates no such right. It is possible that such a right might arise by prescription—but there can be no pretence of a party wall by prescription in the present case. There is no statute providing for party walls in this State, as in Pennsylvania and New York, and in England, act 14 Geo. III, and in France (Code civil).

The only possible way then in which a party wall can exist in the present case is by contract, but the case discloses no evidence to establish any such contract at the time the wall was built in 1844 or prior thereto.

When Sanborn, under whom the complainant claimed, built the wall, one-half of it on each side of the dividing line between the co-terminous lots, he either did it lawfully or unlawfully. If the latter he could have no claim to contribution, and if the former it must have been done with the assent, express or implied of the owners of the adjacent lot. And such assent, if it existed, in the absence, as we have seen, of proof of an express contract to pay, could by no possibility be stretched to imply a contract to pay. For if so, then it was a contract to pay when the wall was built. And such an obligation to pay is purely personal, cannot amount to a covenant, does not run with the land, constitutes no lien on the land. *Ingles* vs. *Bringhust*, 1 Dall. 341. *Hart* vs. *Kucker*, 5 Serg. and Rawle, 1.

Such an implied contract or promise to pay would have been barred by the statute of limitations after five years, and until so barred would have been the ground of an action at law and not of a bill in equity. But upon the supposition that assent to the building of the wall over the line would imply a promise to pay, the next question comes up how much? As much as it cost *i. e.*, half the cost of the whole wall, or only so much as it might be worth to the owner? If the latter it was worth nothing to the owner until he should build and join to it, and that was not done in this case till August, 1860—sixteen years after the wall was built, and then when so used and joined to the same was done under a decree of the court directing the improvement of the said lot by the trustee.

But if the implied promise was to be construed to pay what the wall, or half of it cost, then the builder might absorb the entire value of the lot and more too, by the magnitude and costliness of the structure he might choose to erect on it, unless limited by a special and express agree-

ment; but if such express agreement exists, then there could be no promise by implication.

But it is sought to sustain the decree in this case not upon the ground of contract express or implied, but upon the principle of equitable contribution; and the case of *Campbell vs. Mesier*, 4 John. Chy. R. 334, is cited to sustain it.—But that case is very different from this. In that case Chancellor Kent said, "from the proofs in the case it is manifest that the wall in question was a party wall." Now, how it became a "party wall" whether by the statute of New York or by prescription or by contract, does not appear. It must have been by one or the other of these modes, for it could have been by no other, and certain it was a "party wall." It had remained so long, and had reached such a state of "ruin and decay" as to be "dangerous" and "utterly incapable of being partially cut down." "It was impossible for the plaintiff to rebuild on his lot without taking down that whole party wall to the foundation." The other party had been requested to join in taking it down and rebuilding it, but he refused—forbid it—and threatened to hold the co-tenant responsible if it were attempted. The plaintiff, however, took down and rebuilt the wall and was compensated by the decree of the court for the half of the cost of the job. But here in the case at bar was no party wall, as we have seen, at the time it was built; and no contract to pay for half of it. If it had fallen at any time within sixteen years before the trustee List built and joined to it, could it have been claimed on any principle of equity that the burthen of rebuilding it should have fallen on those who, up to that time, had had nothing to do with it, and had derived no use nor benefit from it? Surely not. It has been held in New York subsequently to the case of *Campbell vs. Mesier*, that where buildings were destroyed by fire, if one party rebuilt the wall it is at his own expense, and the part on the other's land becomes absolutely the property of the latter. *Sherred vs. Cisco*, 4 Sandf., 480. If the doctrine of equitable contribution applied as contended for, why not in the rebuilding of walls destroyed by fire? But Chancellor Kent

also clearly states the doctrine in the case of *Campbell* vs. *Mesier*, when he declares that if the party build the party wall higher than the original, or of more costly materials and of different nature, he cannot have contribution for the cost of extra height, or more costly material, of a different nature, but must bear the cost thereof himself.

Now, if it rest on the ground of equal enjoyment, the other party would be as much bound to contribute to the excess of height or the more costly material of different nature, in the one case as in the other, for he would enjoy them as much as the party rebuilding. It is believed no adjudicated case can be found that carries the doctrine of contribution to the extent claimed for the case at bar.

Indeed, it is not even claimed in this case that there was any party wall till 1860, when the trustee List built and joined to the old wall. How could joining to and enjoying the use of the old wall standing on his own land raise a liability to contribution in this case any more than in the wall rebuilt after the fire, or the wall of extra hight or more costly material? The utmost that could be claimed for it, would be, that after use (if by the fact of use it became a party wall at all) the burthen of keeping it in repair when decayed, or liability to contribution to that extent only. But surely that could never raise an obligation or liability to pay half the cost of a wall built sixteen years before. Suppose that cost had been paid by the former trustees at the time the wall was built, could it be demanded again by a subsequent vendee of the lot? And what difference would it make if not then paid, but since barred at law, or in equity by lapse of time?

I admit that a party wall may exist in this State, but it must arise from contract express or implied, or from prescription, and after the wall obtains that character, but not before, equity will raise the duty and liability to keep the same in repair, but not otherwise. I admit also that the wall in question after August, 1860, when the house was built on the adjacent lot, and joined to it, and it became the subject of common use and enjoyment, may become a party wall,

and this results from contract implied from that continued use. Thenceforth the owners thereof would, as the consequence of the character of a party wall thus impressed upon it, be liable to contribution for repairs, when decay supervened from time and use, but no liability thereby then arose, nor at any subsequent period could arise, to pay for the original construction sixteen years prior, except by express agreement.

From the foregoing views, I am brought to the conclusion that the decree of the circuit court of Ohio county was erroneous, and should be reversed, and the bill dismissed, with costs to the appellant in both courts.

Judge Maxwell concurred.

DECREE REVERSED.