# CHARLESTON.

## Gates *et al.* v. Friedman *et al.*

Submitted March 11, 1919.   Decided March 25, 1919.

1.  Party Walls—*Agreement.*
    Party walls are as a general rule the subject of agreement, express or implied, between adjoining owners. (p. 714).

2.  Same—*Cross Easements—Use.*
    Where adjoining owners are grantees of a common grantor, and the deed to the first conveys to him to the center line an equal moiety in the wall of the building on the adjoining lot divided longitudinally, with the right and authority to use said wall as a part of the building to be constructed by him, and the deed to the other grantee conveys to him the said adjoining lot and the building thereon to the center line of said dividing wall, subject only to the rights of the first grantee, cross easements in the whole of said wall are thereby reserved and vested in each grantee, and said wall is thereby constituted a party wall, and each is entitled to make use thereof as a party wall. (p. 714).

3. SAME—*Use—Repairs.*

Where a party wall so exists, either of the owners has the right. to enter upon it for the purpose of building up, extending or repairing said wall for his building, if it can be done without injury to the adjoining building and said wall is clearly of sufficient strength to bear the additional burden, unless he is restrained by the provisions of his contract or deed. (p. 716).

4. SAME—*Use—Ejectment.*

Where such party wall exists between adjoining owners, ejectment will not lie by the one against the other to recover any part. of the wall so entered upon and occupied by the other for the upbuilding and extension thereof for his building. (p. 716).

Error to Circuit Court, Kanawha County.

Ejectment by A. P. Gates and others against Jacob Friedman and others. Demurrer to plaintiffs' evidence overruled by the court of common pleas, and judgment for plaintiffs, and from a judgment of the circuit court, rejecting the writ of error prayed for by Jacob Friedman, he brings error.

*Reversed and action in ejectment dismissed.*

*Linn & Byrne,* for plaintiff in error.

*L. D. Vickers* and *W. G. Mathews,* for defendants in error.

MILLER, PRESIDENT:

In ejectment, the defendants demurred to plaintiffs' evidence, and upon the conditional verdict found by the jury the court found the law to be for the plaintiffs and pronounced the judgment to which, upon the petition of the defendant Jacob Friedman, the present writ of error was awarded.

The declaration averred that plaintiffs on February 1, 1883, and continuously since then were owners in fee of a certain lot in the city of Charleston, bounded as follows: Beginning on Capitol Street in the center of the side wall nearest to Virginia Street, of what on the date of said deed was known as the Courier Building; thence with Capitol Street towards Virginia Street, fifty-nine feet and one inch to the center of the side wall nearest to Kanawha Street, of what on the same date was known as the Rust Building; thence with the center of said wall to the side line of the

lot formerly owned by Dulce Rowena Laidley; thence with a line of said Laidley's lot to a point opposite the beginning corner; thence a straight line passing through the center of the side wall of the said Courier Building to the place of beginning.

And it is further averred that being the owner and in possession of said lot and of every part thereof as aforesaid from the date of the said deed, defendants on August 13, 1904, unlawfully entered and took possession of a portion thereof described as follows: Being a strip of land and building wall nine inches wide adjoining the lot then owned by the defendant Jacob Friedman, and extending from Capitol Street aforesaid back along said Friedman's lot a distance of sixty-two feet, the entire length of plaintiffs' said lot.

So that what plaintiffs seek to recover is not the whole of their said lot but only the portion thereof upon which it is alleged defendants had so unlawfully entered and were then unlawfully withholding from them.

The evidence of plaintiffs showed that they and Jacob Friedman derived title to their respective lots from a common source, namely, the Kanawha Valley Bank, the plaintiffs by deed dated February 5, 1883, the defendant Friedman by deed dated March 26, 1904, the difference in the time of the two deeds being over twenty-one years. The deed to Friedman covered what is known as the Courier Building, the side wall of which nearest Virginia Street was one of the monuments called for in plaintiffs' deed, and the lot on which the same was situated is described therein as follows: Beginning on Capitol Street at the corner of said Courier Building; thence with a line of said building on Capitol Street about twenty-eight feet and one inch to the center of the side wall of said Courier Building; thence leaving Capitol Street and running from same towards Summers Street, with the center of said wall two feet ten inches to the line of the Gates Building; thence continuing said line back from Capitol Street following the center of said north-east wall of said Courier Building to the rear thereof, and further continuing said line nine feet to a ten-foot alley-

way in the rear of the "Wood" property; thence with the said alley towards the Kanawha River about ten feet. to the corner of the old foundation wall of the Arnold Building; thence with the outside of said foundation wall towards Summers Street twenty-six feet to the corner thereof; thence with the outside of said foundation walls towards the Kanawha River to a point where the south side line so extended reversed to the place of beginning on Capitol Street.

The deed to plaintiffs contains in the granting clause this very important provision: "Together with the right and authority on the part of the grantees to use the side wall of the Courier Building and the Rust Building adjacent to the lot herein conveyed as parts of the building to be constructed by said grantees on the lot herein conveyed."

And the deed to Friedman contains in the granting clause thereof the following provision, which we think must be given special consideration in determining the rights of the parties to the present controversy, namely: "Subject to the conveyance by the party of the first part to A. P. and C. A. Gates, by deed dated February 1, 1883, of record in the office of the clerk of the county court of Kanawha County, West Virginia, in Deed Book 39, page 144, *in regard to the east wall of said building and the rights therein granted.*"

The present suit was not brought, as the record shows, until April 3, 1914, nearly ten years after the alleged trespass by defendants upon that portion of plaintiffs lot sued for. The act of trespass by defendants, according to the evidence on both sides, or proven by that of the plaintiffs and not controverted by the evidence of defendants, consisted in the entry by defendants upon the top of said north-east wall of the Courier Building, an interest in which was conveyed to them as aforesaid, then a three-story building, taking off the top of the wall down to solid courses, and then building upon the original wall, which was about eighteen inches, a twelve inch wall, on plaintiffs' side, for a fourth story of his building, leaving a clear space of six inches on his side of the wall, to the injury may it be said of plaintiffs in point of inside space and strength of the wall, if they should ever wish to build higher on their lot; also in digging down and ex-

tending said side wall from the rear end thereof to the back line of defendant's lot a distance of ten to twelve feet and carrying the same upon the plaintiffs' side corresponding in width and height to the original wall as built for the fourth story; also in occupying the whole of the wall of the original Courier Building fronting on Capitol Street by facing the same with the same kind of brick used by him in rebuilding or repairing the same.

There is no evidence that plaintiffs were not fully advised at the time of the use defendant was making of said original walls and the way they were being extended and built up on their side of the center line. Nor was there any effort on the part of plaintiffs to explain their silence for so many years after the alleged trespass by defendant.

On the demurrer to the evidence several points are presented. But the turning point, we think, is whether the wall in question is or is not a party wall; if a party wall, one set of rules and principles control; if not, other rules and principles govern the rights of the parties. The plaintiffs contend that the wall is not a party wall; that by their respective deeds each owns to the center line thereof, with no rights in the other to any cross easements or rights in that part of the wall beyond the center line thereof, and with respect to which they are entitled to be protected the one against the other.

We have no statute defining or governing the subject of party walls, local or general as in England by act of Parliament, and in some of the states. Rudall on Party Walls, (2nd ed.), 36, Ch. II.; Jones on Easements, secs. 635-640. Usually party walls are the subject of agreement, express or implied, between adjoining owners. Jones on Easements, sec. 641 et seq. For definition we find that the text writers and the adjudicated cases generally refer to the decision of Mr. Justice Fry in *Watson* v. *Gray,* 14 Ch. Div. 194, as follows: " 'The words appear to me to express a meaning rather popular than legal, and they may, I think, be used in four different senses. They may mean, first, a wall of which the two adjoining owners are tenants in common, as in *Wiltshire* v. *Sidford,* (1 Man. & Ry. 404), and *Corbitt* v.

*Porter,* (8 B. & C. 257, 265). I think that the judgments in those cases show that that is the most common and primary meaning of the term. In the next place the term may be used to signify a wall divided longitudinally into two strips, one belonging to each of the neighboring owners, as in *Matts* v. *Hawkins,* (5 Taunt. 20). Then, thirdly, the term may mean a wall which belongs entirely to one of the adjoining owners, but is subject to an easement or right in the other to have it maintained as a dividing wall between the two tenements. The term is so used in some of the building acts. Lastly, the term may designate a wall divided longitudinally into two moieties, each moiety being subject to a cross easement in favor of the owner of the other moiety.' This last is the sense in which the term is more frequently used in the United States.'' Jones on Easements, sec. 632. See also Rudall on Party Walls, 1, Carson's Gale on Easements, (9th ed.), 406. According to Rudall the primary meaning of the term ''party wall'' is one of which two adjoiners are tenants in common; but a wall in common use by two adjoining land owners prima facie makes them tenants in common thereof. Rudall on Party Walls, *supra,* p. 2. Generally the rights of the parties are by contract. The case of *Matts* v. *Hawkins,* 5 Taunt. 20, is cited and relied on by plaintiffs' counsel as opposed to this proposition and as sustaining the contention that the wall here involved is not a party wall. But as pointed out by Mr. Rudall, the wall in that case was not within the county, but within the party wall act then in force.

Our conclusion is that the rights of the parties in the case at bar are governed by the provisions in their respective deeds, above emphasized, and that the wall in question falls plainly within the last or fourth class defined by the text writers and judicial decisions cited, that is where the wall is divided longitudinally into two moieties, each moiety being subject to a cross easement in favor of the owner of the other moiety. This, say the authorities cited, is the sense in which the term is more frequently used in the United States.

As we have observed, the deed to plaintiffs not only con-

veyed to them the fee in the land to the center line of the
easterly wall of the Courier Building, but also the right and
authority to use said wall and also the side wall of the Rust
Building "as parts of the building to be constructed by
them." It may be said, however, that no such cross ease-
ments were reserved to the plaintiffs and that the defendant
Friedman by his subsequent deed acquired no right or rights
to any use of said wall beyond the center line of said wall
to which his grant extended. But did he not get by his deed
everything and every right remaining vested in the bank, the
common grantor? It seems to be well settled, at least in
England, that where one grants a divided moiety of an out-
side wall of his own house with the intention of making such
wall a party wall between his house and an adjoining one
to be built by the grantee, the law implies the grant and res-
ervation in favor of the grantor and grantee respectively of
such easements as may be necessary to carry out what was
the original intention of the parties with regard to the use
of the wall, the nature of those easements varying with the
particular circumstances of each case. Carson's Gale on
Easements, *supra,* pp. 407-8; Washburn on Easements, (4th
ed.), p. 606 et seq. The Supreme Court of Appeals of Vir-
ginia says: "A party wall is a dividing wall between two
houses, to be used equally, for all the purposes of an ex-
terior wall, by the respective owners of both houses." *Belle-
not* v. *Laube's Ex'or,* 104 Va. 842. While the right may not
exist as a common law or statutory right, it exists in this
State as the result of contract, express or implied. *List* v.
*Hornbrook,* 2 W. Va. 340, 345. So that whatever rights
were reserved by the grantor, were granted to Friedman in
the deed to him, and were those which in this country have
been held to appertain to the owners of a party wall.

The wall in controversy then being a party wall, with the
usual rights of each owner appertaining thereto, the ques-
tion remains: Did Friedman have the right to enter upon
it in the way and manner alleged and proven, to build up and
extend it in the repair and extension of his building? The
authorities on this question seem to be uniform in holding
that either of the adjacent owners may increase the height

or extend the length of such wall if it can be done without injury to the adjoining building and the wall is clearly of sufficient strength to bear the addition. This seems to be the general rule unless limited by the provisions of the contract or deed. Jones on Easements, secs. 696-699, and cases cited in notes. *Bloch* v. *Isham*, 28 Ind. 37, 92 Amer. Dec. 287, and elaborate note; *Calmelet* v. *Sichl*, 48 Neb. 505, 58 Amer. St. Rep. 700, and note; *Bright* v. *Bacon* (Ky.) 116 S. W. 268, 20 L. R. A. (N. S.) 386, and note. In this note a long line of decisions is cited for the proposition that in this country, in the absence of agreement, express or implied, regulating the respective rights of the owners of a party wall, either one may increase the height if the wall is of sufficient strength and can be raised without injury to the adjoining building and without impairing the cross easement to which the other owner is entitled, and it is there said that no American authority can be found, and we find none, which disputes the proposition. And upon the same principle and for like reasons the rule permitting the raising of a party wall permits the extension thereof unless restrained by the contract. *Matthews* v. *Dixey*, (Mass.) 5 L. R. A. 102; *Everett* v. *Edwards*, (Mass.) *Id.* 110.

So that it now seems clear that plaintiffs have no right by ejectment to recover from defendants the nine inches of the party wall situated on their side of the division line thereof. If under the law of party walls Friedman had the right to extend the wall upwards and logitudinally, as we hold he had, he had the right to go upon the wall and occupy it as far as necessary and reasonably convenient to accomplish the work and he cannot be ejected therefrom. In justice and equity when defendant elected to build only a twelve inch wall he should have built the same on his side of the original wall so as to leave plaintiffs free when they came to use the wall on their side to build up and strengthen it for their purposes. But we do not think ejectment is the proper remedy, if any they have, to right their wrongs in the premises.

Our conclusion is to reverse the judgment of the circuit court rejecting the writ of error prayed for, and also the

judgment of the court of common pleas overruling the defendants' demurrer to the evidence, and to enter such judgment thereon as we think the trial court and the circuit court should have entered, namely, that the demurrer be sustained and that the action be dismissed for want of jurisdiction in ejectment, and that defendants recover their costs in the trial court as well as in this court herein sustained.

*Reversed, and action in ejectment dismissed.*