# CHARLESTON.

MORRISON DEPARTMENT STORE COMPANY *v.* LEWIS.

Submitted February 19, 1924. Decided April 22, 1924.

1.  PARTY WALLS—*Agreement Held Not Abrogated by Destruction of Party Wall by Fire.*

    The respective owners of two adjoining city lots enter into a party wall agreement, which agreement binds their heirs, executors and assigns, and expressly states that it runs with the land, but makes no provision for reconstruction in event of total or partial destruction of the wall; and the owners of one of said lots erects a building on their lot, constructing a party wall in conformity with the contract, and afterward convey their lot and building to a corporation, binding it to carry out the provisions of said agreement. The buildings on both lots are afterwards destroyed by fire, which partially destroys the party wall. Thereafter the said corporation constructs a new building on its lot, using a substantial part, remaining intact, of the old party wall; and during the progress of the work, L. who had subsequent to the fire acquired the adjoining lot by deed binding him to carry out the provisions of the party wall agreement, assists in directing the reconstruction of the party wall and uses the same in the reconstruction of a large building on his lot. Under these circumstances said party wall agreement is not abrogated or destroyed by the partial destruction of the original party wall, and both parties are bound by the terms thereof. (p. 286).

2.  ARBITRATION AND AWARD—*Notice Revoking Arbitration Clause in Contract Must be of Same Dignity as Original Contract.*

    Where contract under seal contains an arbitration clause

by which the parties agree to submit to arbitration certain matters in the event the parties cannot agree, and if either party desires to revoke said arbitration clause, the notice of revocation must be clearly expressed and plain in its intent and of the same dignity as the contract authorizing the submission. (p. 289).

3. SAME—*Notice of Revocation of Arbitration Clause, in Contract Under Seal, Must Also be Under Seal.*

Where the contract requiring the submission to an arbitration is by deed under seal, the notice of the revocation of the arbitration clause in said contract, to be effective, must also be under seal. (p. 289).

4. SAME—*Instruction That Award Provided for in Contract Should be Basis of Verdict Held Not Erroneous.*

Where it appears that a certain clause in a written contract providing for the building of a party wall authorizes certain questions to be submitted to arbitrators, and the proof shows that arbitrators were appointed in accordance with the provisions of the contract, and that they met after due notice and were sworn and heard the evidence on the questions involved, and rendered their award thereon; it is not error for the court, in an action on the contract to recover defendant's proportionate part of the cost of re-building the wall, to instruct the jury that this award shall be the basis of their verdict. (p. 289).

Error to Circuit Court, Cabell County.

Action by the Morrison Department Store Company against Walter H. Lewis. Judgment for defendant, and plaintiff brings error.

*Reversed, verdict reinstated, and judgment rendered.*

*L. L. Wilson and Geo. I. Neal,* and *Poffenbarger, Blue & Dayton,* for plaintiff in error.

*Paul W. Scott* and *George S. Wallace,* for defendant in error.

McGINNIS, JUDGE:

This is an action of assumpsit brought in the Circuit Court of Cabell County.

The declaration contains the common counts in assumpsit,

and a special second count on a contract entered into between O. J. Morrison and others and C. W. Campbell and others, bearing date June 1, 1924, which contract is as follows:

"THIS INDENTURE, made this the first (1st) day of June in the year nineteen hundred and fourteen (1914), by and between O. J. Morrison and C. A. Morrison, his wife, J. S. Darst and Blanche Darst, his wife, C. W. Starcher and Edna A. Starcher, his wife, J. M. Miller and Jennie Daniel Miller, his wife, and F. F. Starcher, and Clara Starcher, his wife, parties of the first part, and C. W. Campbell and Jennie E. Campbell, his wife, Douglas W. Brown and Mary G. Brown, his wife, and Cary N. Davis and Roberta L. Davis, his wife, parties of the second part:

"WHEREAS, The said O. J. Morrison, J. S. Darst, C. W. Starcher, J. M. Miller and F. F. Starcher are the owners of that certain piece and parcel of land situate on the southerly side of Fourth Avenue in the City of Huntington, Cabell County, West Virginia, fronting forty-five (45) feet on said Fourth Avenue and running back between parallel lines a distance of two hundred (200) feet to an alley known as Court Street, said piece or parcel of land consisting of Lot Number Eight (8) and the westerly one-half of Lot Number Nine (9), in Block Number Ninety-five (95), as shown and designated upon the official map of the said City of Huntington, made by Lewis Leete, Civil Engineer, and of record in the Clerk's Office of the County Court of said Cabell County; and

"WHEREAS, The said C. W. Campbell, Douglas W. Brown and Cary N. Davis are the owners of Lot Number Seven (7), in said Block Number Ninety-five (95), as shown upon the official map of the said City of Huntington, which said lot adjoins, on the westerly side, the said Lot Number Eight (8), in Block Number Ninety-five (95), owned by the male parties of the first part as aforesaid; and

"WHEREAS, There is situate upon the said Lot Number Seven (7), in said Block Number Ninety-five (95), owned by the male parties of the second part as aforesaid, a two story brick office building, the same being approximately sixty-one (61) feet in depth from the front of said Lot Number Seven (7), and approximately thirty (30) feet in heighth, the easterly wall of which said building, and being the wall adjacent to said

Lot Number Eight (8), in Block Number Ninety-five (95), is approximately nine (9) inches in thickness; and

"WHEREAS, the said O. J. MORRISON, J. S. Darst, C. W. Starcher, J. M. Miller and F. F. Starcher contemplate and have actually begun the erection and construction of a four-story brick building, two hundred (200) feet in depth, upon the lots and parcels of land owned by them as aforesaid; and

"WHEREAS, It is contemplated that the westerly wall of the building so to be constructed by the male parties of the first part shall be eighteen (18) inches in thickness, up to and including the first floor, and thirteen (13) inches in thickness for the residue of the building, approximately two hundred (200) feet in depth, and approximately seventy-five (75) feet in heighth, and shall be placed one-half on the lands of each of the parties hereto, save and except that the easterly wall of the building now owned by the said C. W. Campbell, Douglas W. Brown and Cary N. Davis (which said easterly wall is approximately nine (9) inches in thickness, as aforesaid) shall become and be part of such party wall.

"NOW, THEREFORE, THIS AGREEMENT: That the said parties of the first part, for themselves, their executors, administrators, heirs and assigns, and the said parties of the second part, for themselves, their executors, administrators, heirs and assigns, agree each with the others as follows:

"FIRST: The wall so to be formed and constructed shall be and remain a party wall.

"SECOND: It is understood that the wall so to be constructed by the male parties of the first part, and to become a party wall as hereinbefore covenanted, shall be constructed in a substantial and workmanlike manner and so as to conform in all respects to the laws and ordinances regulating the construction of buildings.

"THIRD: Whenever the said C. W. Campbell, Douglas W. Brown and Cary N. Davis, their heirs or assigns, shall use the whole or any part of said party wall, they shall pay to the male parties of the first part, their heirs or assigns, one-half of the actual cost of so much of said party wall as they may use. But it is, however, provided that in estimating the value of so much of said wall as may be used by the said Campbell, Brown and Davis, their heirs or assigns, there shall not be taken into consideration the portion of the said party wall of which the easterly wall of the present building of the said Campbell, Brown and Davis shall

form a part and parcel. It being understood that the said Campbell, Brown and Davis shall own one-half of said portion of said party wall without liability or obligation to make any payment therefor.

"FOURTH: Either of the parties hereto may, at any time, extend the said party wall horizontally or vertically to such heighth or depth as may be consistent with safety, may make such extension or addition of greater thickness than eighteen (18) inches, but not of less thickness. Either party may add to the thickness of the said party wall, or of any extension thereof or addition thereto then already built. It is, however, provided that not more than nine (9) inches of the thickness of any extension or addition to said wall built by either party shall be placed upon the land of the other party without the consent of the latter, and no part of any addition to the thickness of said wall, and or of, any extension or addition thereto, then already built, made by either of the parties hereto, or by those claiming under them respectively, shall be placed upon the lands of the other party without the consent of the latter; provided, however, that in the event either party hereto may desire to increase the thickness of said party wall for the purposes of increasing the heighth thereof and it is found necessary that a portion of the footings for such increased thickness shall be placed beneath the surface of the lands of the other party, then the same may be so placed at the sole and entire cost and charge of the party desiring such footing, but such footing shall be placed at least twelve (12) feet beneath the surface of the ground, measuring from the top of the footing to a point even with the surface of Fourth Avenue sidewalk, and such footing shall be placed in the most modern and approved method known to engineering skill and in such manner as not to in any wise endanger said party wall or any building on the property of the other party, and the party at whose instance such footing shall be inserted shall be liable for all damages of every nature whatsoever occasioned to the building or other property of the other party.

"Any extension of or addition to the said party wall shall be built in a substantial and workmanlike manner of like durability, strength and fire resisting qualities to the said party wall, and shall conform in all respects to the laws and ordinances regulating the construction of buildings in force at the time.

"FIFTH: It is provided that the parties of the first part, in constructing the said party wall shall provide

no openings therein of any nature whatsoever without the consent of the parties of the second part, save as hereinafter in this clause provided. And, in the event such consent be given and such openings made, the same shall be subject to the right of the parties of the second part, their heirs or assigns, to close up such openings at any time whatsoever they may desire to use any portion of said party wall.

"Either party hereto shall have the right to use the side of said party wall next to the lot owned by such party, by attaching structural and finishing material thereto. It being, however, understood that the said wall is not to be cut beyond a maximum of six (6) inches in depth, and that such cutting is to be confined to the area actually necessary to receive the structural material to be supported.

"SIXTH: In the event any extension or addition to the said party wall shall at any time be made by either of the parties hereto, their heirs or assigns, shall be at liberty to use the whole, or any portion of such extension or addition, upon making payment of one-half of the actual cost of so much thereof as such party may use.

"SEVENTH: In the event of a disagreement between the parties hereto or their successors in ownership as to the cost of the whole or any portion of said party wall, or of any extension or addition thereto, or any portion thereof, the same shall be determined by arbitration, in the manner following, that is to say, the party desiring such arbitration shall nominate one arbitrator and shall give notice to the other of such nomination. The other party shall within ten days' time nominate an arbitrator, and in the event the two thus chosen can not agree upon the third arbitrator, then the third arbitrator shall be chosen by the Judge of the Circuit Court of Cabell County, West Virginia. In the event that upon receipt of notice of the appointment of one arbitrator, the other party hereto declines or refuses to nominate an arbitrator, then the party desiring such arbitration shall select a second arbitrator. The said arbitrators shall be intelligent men and versed in the construction of buildings. They shall be sworn, and the award of said arbitrators, or any two of them, shall be binding upon the parties hereto and their successors in ownership.

"EIGHTH: The parties hereto, for themselves, their successors, heirs, administrators and assigns, do covenant each with the other that the agreements herein contained

shall be covenants running with the lands and that the rights, duties and obligations hereunto of each party and of those claiming under him, or them, shall cease with the termination of his or their ownership of said respective lots and parcels of land, except the duties and obligations growing out of any erection or use during ownership.

"THIS INDENTURE is executed in duplicate.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals, the day and year first above written." (Here follows the signatures of the parties.)

Said special count of the declaration substantially charges that said contract was executed by the parties thereto, and duly recorded in the office of the Clerk of the County Court of Cabell County, on the 16th day of December, 1914, and that at the time the contract was entered into, the contracting parties, mentioned therein, were the owners of the respective properties therein described; that said Campbell, Brown and Davis, on the 22nd day of July, 1919, sold and conveyed lot No. 7, described in said contract, to the defendant Walter H. Lewis, and that by said deed the defendant became possessed of all rights and assumed all of the obligations which had theretofore been possessed and assumed by said C. W. Campbell and others, set out in said contract, and that on the 15th day of January, 1915, the parties named in said contract as parties of the first part, conveyed the lot so owned by them as described in said contract to the plaintiff, Morrison Department Store Company, a corporation, and that it by virtue of said conveyance, became possessed of all the rights and privileges and assumed all of the obligations theretofore had by the parties of the first part, named in said contract. The said special count also alleges that the plaintiff and the defendant are the respective owners of the lot described in said contract, and each are mutually bound by the covenants contained in said contract; that the plaintiff and its predecessors in title, namely O. J. Morrison and others mentioned in said contract as parties of the first part, after said contract had been executed, erected and completed a party wall between the respective lots of the plaintiff and defendant by constructing a four story brick building, the

west wall of which constitutes the party wall referred to in said contract, and that the cost of labor and material expended and used on said wall was $9952.92; that after the said wall had been constructed by plaintiff, the defendant erected a five story brick building on his lot Number 7, and that said party wall is the eastern wall of the defendant's said building; that the plaintiff demanded of the defendant payment of one-half of the cost of construction of said party wall as provided in the third article of said contract, and that said plaintiff and defendant disagreed in reference to said amount and the existence of said contract, and that owing to said disagreement arbitrators were appointed as provided in article 7 of said contract, and the manner in which said arbitrators were appointed is set forth in the declaration from which it appears that the defendant, although notice was given him, refused to take any part in said arbitration or in the appointment of the arbitrators; however, the declaration alleges that these arbitrators met and heard evidence and fixed the cost of said party wall at $9952.92 and that the defendant should pay the one-half of that amount to the plaintiff, to-wit: the sum of $4976.46, that demand has been made on the defendant by the plaintiff for the payment of said sum and the defendant refused to pay said sum, and declared that he did not recognize the amount fixed and awarded by said arbitrators, as an obligation against him, and refused and still refuses to pay said amount.

The defendant filed certain off-sets amounting to $3400.00, for clearing his lot of debris, from fire which destroyed the Morrison Building, $1200.00, and $2200.00 for rent on his lot for one year while the debris remained thereon. The case was tried on the plea of non-assumpsit and the jury rendered a verdict for the plaintiff for $4679.50, and on motion of the defendants said verdict was set aside and the case comes here upon a writ of error.

The plaintiff introduced the contract between O. J. Morrison and others and Campbell, Brown and Davis of June 1, 1915, and a deed from O. J. Morrison and others to the plaintiff bearing date January 5, 1915; a deed from Campbell, Brown and Davis to W. H. Lewis of July 22, 1919, convey-

ing lot number 7 to said Lewis and a deed from said W. H. Lewis to M. Cohen et al., of June 23, 1920, conveying a one-half interest in said lot No. 7, and a deed from Cohen, et al., to W. H. Lewis of January 13, 1921. The plaintiff also introduced the award of arbitration set forth in the record, and after showing that the award was honestly and fairly made and the amount so found by the arbitrators to be fair and impartially arrived at the plaintiff rested its case.

The defendant, claiming that the contract of June 1, 1914, was no longer in force, proved that he notified the plaintiff's attorney and the arbitrators that he refused to enter into the arbitration, denied the validity of the appointment of the arbitrators and their jurisdiction to arbitrate any amount due from him to the plaintiff, he refused to offer any testimony before the arbitrators and at no time recognized their authority to act as such arbitrators. The defendant also offered evidence in the case to prove the off-sets filed by him against the plaintiff. It was shown that soon after the contract of June 1, 1914 was entered into between plaintiff's grantors and Campbell, Brown and Davis, the plaintiff erected a four story brick building, 200 feet long and 75 feet high; that it made use of the east wall of the Campbell, Brown and Davis building, which was two stories high and about 61 feet long and 9 inches thick, as a part of the west wall of its said 4 story building, that it made the Campbell, Brown and Davis wall 9 inches thicker and extended it some 139 feet and so constructed the west wall of its said four story building as to make it 18 inches thick at the base, and one-half of said wall was on the Campbell, Brown and Davis lot and one-half on the lot of the plaintiff. Campbell, Brown and Davis at no time made use of any part of the said wall except that which constituted the original east wall of their building and, under the contract, was not required to pay for any portion of said wall until used by them. This party wall was begun in 1914 and completed in 1915, and on July 13, 1919, this four story building of the plaintiff and the Campbell, Brown and Davis building were both partially destroyed by fire, leaving this party wall intact practically up to the second floor of the Morrison Building. After the fire,

to-wit, on the 22nd day of July, 1919, Campbell, Brown and Davis, and their wives, respectively, conveyed lot No. 7 to the defendant, in which deed is the following covenant:

"TOGETHER with such rights, benefits and privileges accruing and belonging to the said parties of the first part under and by virtue of two certain party-wall agreements, one between D. M. Mossman and wife and the male grantors herein, bearing date November 1st, 1909, and of record in said clerk's office, and the other between said grantors herein and O. J. Morrison and others bearing date June 1st, 1914, and of record in said clerk's office in Deed Book No. 137, page 548, but the party of the second part covenants that he will and does hereby, assume all and singular the obligations imposed upon the parties of the first part herein by the terms of the agreements aforesaid, or either thereof."

On the 3rd day of June, 1920, the defendant conveyed a one-half interest in said lot No. 7 to M. Cohen, and others, in which deed the grantees therein were required to respect, carry out and assume the obligations of said contract, and on June 13, 1921, said Cohen and others re-conveyed said one-half interest in said lot to the defendant, in which deed the contract is again referred to and the rights, benefits and privileges granted by said defendant to said Cohen and others were re-conveyed to and assumed by the defendant.

After the fire and the destruction of the buildings on the two lots mentioned in the record, the plaintiff began to erect a new four story building on its said lot, using that portion of the party wall which was still intact, which building was completed about June 19, 1920.

About the time of the completion of the said building by the plaintiff, the defendant began to erect and did complete a five story building on his lot, using as the east wall thereof the west wall of the plaintiff's building, this being the party wall in question; and he now says that the contract of June 1, 1914, between Morrison and others and C. W. Campbell and others is no longer in force and refuses to pay for any portion of said wall.

There is much authority cited in support of the theory that the contract was rendered void by reason of the destruc-

tion of the buildings; that the party wall about which the contract was made was no longer a wall, and therefore there was no longer any contract between the parties. The facts in this case preclude such holding. Here the defendants purchased the property after the fire which only partially destroyed the wall. The defendant was present at the time the party wall was reconstructed, giving instructions as to how much of the old party wall was to be removed, and directed the location of the joist rests and flues, and by the acceptance of his deed, and by virtue of the contracts considered, he was bound by the terms of the contract. Under the circumstances, can he now say that there is no contract, and that he is not bound to pay his proportionate part of the expenses for the erection of this wall, having made use of it by connecting his building thereto? We think not.

The defendant claims that he refused to pay for his proportionate part of the expenses for the construction of this wall because of the fact that, by reason of the destruction of the old wall, the contract terminated and was no longer binding upon him, and that he demanded that the parties enter into a new contract, just what the terms of this new contract which he desired to make does not appear; his conception of the terms of the new contract which he desires to make was evidently more advantageous to him than the original contract. Just why the terms of the original contract would injure him or cause him to pay more for the use of the wall than would be fair and equitable we fail to see. The substantial requirements of this contract required him, if he used the wall, to pay one-half the expenses of its erection. How much less he expected to pay under the new contract he fails to disclose. This wall was not totally destroyed, a substantial portion of the same was left at the least, in such a state as to be added to and built upon. The defendant purchased his lot after the first wall had been destroyed. He advised the plaintiff about the amount of the wall to be removed. He made directions for joist rests and flues on the side of the wall. He stood by and saw the plaintiff erect the wall partly on his land and partly on the land of the plaintiff, and by the acceptance of his deed from Campbell and

others, he specifically assumed all and singularly the obligations imposed upon Campbell and others by the contract of June 1, 1914. He erected his five story building and made the wall in question the east wall of said building. The defendant claims that the contract of June 1, 1914, is no longer a binding contract by reason of the partial destruction of the wall. Can he now claim there is no contract by which he is bound when he assumed all the obligations of the contract by this deed? Can he expect the plaintiff to build for him a wall for his building which he makes use of and at the same time expect the plaintiff to sweep and garnish his lot for him? We hold that this contract is still in existence and the damages to the plaintiff are measured thereby.

An examination of the many cases cited by the defendant on the proposition that, after the first wall had been partially destroyed, the contract was no longer in effect, discloses the fact that this case is *sui generis.* The diligence of counsel has not succeeded in bringing to light a similar case, nor have we been more fortunate.

In *List* v. *Hornbrook,* 2 W. Va. 340, the wall in question had been placed upon the line under a verbal permission. Sixteen years later the non-building party erected a new building and made use of the wall. A suit in equity was instituted for compensation for one-half of the cost of the wall. The bill was dismissed upon the ground that there was no contract which ran with the land, no obligation assumed by the defendant. The court saying:

> "No proof of a contract to pay for the erection of one-half of the wall being proven it only becomes a party wall from continued use, it was adopted by the adjacent lot holder but no liability arose from such adoption to pay for the original construction sixteen years prior. No liability could arise except by express agreement."

The court held in *Ebert* v. *Mishler,* cited by the defendant, (Pa.) 83 Atl, 596, that,

> "The crucial question in the case is whether the agreement of 1888 extinguished the easement created by the deed in 1869."

This case throws but little light, if any, upon the questions involved in the present case. In the case of *Cole* v. *Hughes,* 54 N. Y. 444, the court held that the party wall agreement did not run with the land. The contract in question there is very similar to the contract in this case; it, however, did not contain a covenant that it should run with the land, and there was no specific covenant by which the defendant assumed the obligations of the contract as in this case. No proof of the defendant standing by and observing the wall being constructed partly on his land, no proof of instructions being given by the defendant as to how much of the old wall should be removed, and the manner in which the wall should be constructed so as to conform to the plan of the building which he, at the time, contemplated building on his lot, as in this case.

In this case the contract specifically states that it runs with the land. The defendant took the land encumbered with it and we think he is bound by it, not for one-half the cost of the old wall which was built and partially destroyed before he acquired the property, but one-half the cost of the wall which he used as a part of his building calculated at the time said wall was built. The wall that the defendant used is the wall he must, under the contract, contribute one-half of the expense, and as it appears from the record that the defendant began the erection of his building about the time the plaintiff's building was completed and that debris, by reason of the fire and destruction of the building, had fallen on both lots; the defendant had purchased his lot with this debris upon it and the plaintiff, soon after the fire, began to rebuild the party wall. We do not think that either party would have the right, under the law, to charge the other for the removal of the debris thus occasioned or to charge rent for the use of the lot while said debris remained upon the same.

The serious question in the case is as to whether or not the defendant revoked the arbitration clause in the contract. The written notice was given and directed to the arbitrators, and accepted by the plaintiff's counsel. The defendant was notified by the arbitrators of the time, place and purpose of

this meeting, and the defendant, on the day that the arbitrators met, served the notice in question whereby he denied the validity of the appointment of the arbitrators under the contract and the right, power, authority and jurisdiction to hear evidence and determine·the amount due from defendant to plaintiff, which notice closes with the following statement: "This notice being only for the purpose of informing you as to the want of any right, power, authority or jurisdiction in you or any of you as aforesaid, and for no other purpose." It is signed by the defendant, but there is no seal attached to it. It does not mention the revocation of the arbitration clause of the contract, nor does it express any intention to revoke the submission or the authority of the arbitrators. The notice denies the authority and jurisdiction of the arbitration but expresses no intention of revoking their authority.

Mere intention to revoke an arbitration clause does not suffice, to be effective it must be expressed. There can be no implied revocation here.

> "The methods of implied revocation, as shown by the authorities, are five in number: (1) Failure of arbitrators to agree; (2) Death of a party; (3) Death or refusal of the arbitrators to act; (4) Marriage of the *feme sole* party; (5) Institution of a suit." *Sutton* v. *Lyall*, 10 Vt. 91.
>
> "So long as the intention to revoke the submission is clearly expressed and the revocation is of the same dignity as the submission and the arbitrators have been notified of the revocation, and it. is plain in its intent, the revocation will be upheld but not otherwise."
>
> "A submission by deed can be revoked by deed only." See note to *Williams* v. *Branning Mfg. Co.*, 138 A. S. R. 646, citing many cases.

The arbitration clause in question in this case is contained in a sealed instrument and the notice here in question, not being under seal, is ineffective and does not meet the requirements of the law.

*Shaver* v. *Bush*, 57 Ind. 349; *Brown* v. *Levatt*, 26 Me. 251; *Wallice* v. *Carpenter*, 13 Allen (Mass.) 19; *Dexter* v. *Young*, 40 N. H. 130; *Van Antwerp* v. *Stewart*, 8 John (N. Y.) 25.

The West Virginia cases cited by the defendant: *Kohlsatt*

*v. Coal Company*, 90 W. Va. 656; *King* v. *B. & O. Ass'n.*, 35 W. Va. 385; *Turner* v. *Stuart*, 51 W. Va. 493; *Lawson* v. *Williamson*, 61 W. Va. 669; *Flaville* v. *Coal Company*, 82 W. Va. 295, have no application to the question now under consideration. In neither of these cases did the question of express revocation arise. They all hold that unless the arbitration clause in the contract provides that the contract makes the arbitration a condition precedent to the right of action, a suit may be brought without submitting the question to arbitration. In the present case there was an arbitration strictly in conformity with article 7 of the contract and under the terms thereof it is binding upon the defendant.

We are therefore of the opinion that the lower court erred in setting aside the verdict of the jury and the order of the court setting it aside will be reversed, the verdict re-instated and judgment thereon entered here.

*Reversed, verdict reinstated, and judgment entered.*